[Civ. No. 41382. First Dist., Div. One. Sept. 14, 1977.]

NORMA CLARK, Petitioner, v.
THE SUPERIOR COURT OF MENDOCINO COUNTY,
Respondent;
JIMMIE CLARK, Real Party in Interest.

**COUNSEL**

Jane M. Ball and Fowler & Ball for Petitioner.

No appearance for Respondent.

Lee S. Adams for Real Party in Interest.

**OPINION**

**SIMS, Acting P. J.**—On the petition of the former Norma Clark (now Norma J. Garnes), the mother of Tanya L. Clark and the respondent in the original divorce proceedings pending below, we issued an alternative writ of mandate to determine whether proceedings, arising out of the request of the child's father for an order changing the custody of the child from the mother to him, should be quashed or dismissed under the provisions of the Uniform Child Custody Jurisdiction Act (Civ. Code, § 5150 et seq.) because of the nonresidence of the mother and the child.

The mother contends that under the provisions of section 5152 of the Civil Code[1] an uncontested dissolution proceeding five years prior to the

---

[1]The provisions of Civil Code section 5152 pertinent to this case read as follows:

"(1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if the conditions as set forth in any of the following paragraphs are met:

"(a) This state (i) is the home state of the child at the time of commencement of the proceeding, . . .

"(b) It is the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships.

" . . . . . . . . . . . . . . . . . . .

"(3) Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody."

filing of the request for change of custody does not confer continuing jurisdiction upon the California court to make a subsequent modification order, when the child and her mother were living in Oregon, a state in which similar provisions are in effect (Ore.Rev.Stats. § 109.700 et seq.), at the time the original custody decree was entered and have resided and been domiciled there at all times thereafter. Alternatively, the mother seeks a ruling that the proceedings should be dismissed because, under the circumstances of this case, the California court is an inconvenient forum to make a custody determination, and an Oregon court would furnish a more appropriate forum to resolve the issues raised by the father's request for an order for change of custody. (See Civ. Code, § 5156.)[2]

On review we conclude that in view of the possibility of concurrent jurisdiction of the California court and an Oregon court, it was, under the circumstances of this case, an abuse of discretion for the California court to fail to stay the local proceedings on condition that the father timely take appropriate proceedings in Oregon, and that the mother submit to jurisdiction there for a determination of the father's request for a change of custody. The policy of the act which dictates that the issue of custody should be decided in the court with greatest access to the relevant evidence requires no less in this case where the father's right to relief is predicated upon his information and belief as to conditions in the child's "home state."[3]

---

[2]Section 5156 provides in relevant part:

"(1) A court which has jurisdiction under this title to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.

"(2) A finding of inconvenient forum may be made upon the court's own motion or upon motion of a party or a guardian ad litem or other representative of the child.

"(3) In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:

"(a) If another state is or recently was the child's home state.

"(b) If another state has a closer connection with the child and his family or with the child and one or more of the contestants.

"(c) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state.

"(d) If the parties have agreed on another forum which is no less appropriate.

"(e) If the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in Section 5150."

[3]" 'Home state' means the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old the state in which

The facts are not contested. They may be gleaned from the father's request for an order to show cause why modification of custody should not be ordered, the mother's affidavit, and declaration under Uniform Custody of Minor Act, the findings of the trial court in its order denying the mother's motion to quash, and from the interlocutory decree of divorce, with a copy of which we have augmented the record. (See Cal. Rules of Court, rule 12.)

As a result of the union of the parties, which was dissolved approximately five years after their marriage by proceedings in the case under review, Billy M. Clark was born January 21, 1967 and Tanya L. Clark, whose custody is presently questioned, was born May 27, 1969. On the latter date, according to the mother's affidavit, the parents were living in "Garverville" (*sic* Garberville, Humboldt County [?]) in this state. She states that the family moved to Arkansas in November 1971. The court, however, found that for the four years immediately prior to the dissolution of their marriage, the father and mother were residents of the State of California. The mother alleged and the court found that in January 1972 the mother and daughter established their separate residence in Oregon. Nevertheless, the court also found that they, along with the father and son, were residents of the County of Mendocino at the time of the dissolution. The mother and daughter remained in Oregon continuously ever since January 1972, with the exception of Tanya's visits to her father, as noted below. The daughter has attended school, commencing with kindergarten in Oregon, and was in the second grade at the time of the proceedings in the court below. She also attends Sunday school in that state, and is a patient of a pediatrician there.

As a result of proceedings commenced by the father in respondent superior court, in which the mother voluntarily appeared on March 14, 1972, the court following a hearing on March 17, 1972, awarded the husband an interlocutory decree of divorce. The interlocutory decree, which was entered the same day, bears the signature of the mother following "Approved As to Form," and provides with respect to the custody and support of the children as follows: "The court also orders that the custody of BILLY M. CLARK, a son, born January 21, 1967 is awarded to Petitioner, and the custody of TANYA L. CLARK, a daughter, born May 27, 1969, is awarded to Respondent, with each party to have

---

the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period." (§ 5151, subd. (5).)

reasonable rights of visitation with the children. Petitioner is ordered to pay to Respondent the sum of $60.00 per month for the support and maintenance of TANYA L. CLARK until said child reaches the age of majority, marries, becomes self-supporting, or the further order of this Court." A final decree was granted and filed on September 19, 1972.

The father and his son thereafter continued to make their home in Mendocino County. Pursuant to the decree the father enjoyed visitations with his daughter in Mendocino County in the summer of 1972, 1973, 1975 and 1976;[4] two of these visitations were more than a month in duration; and no visit was made in 1974 because the son was visiting with his sister and mother in Oregon.

On March 17, 1977, five years after the entry of the interlocutory decree the father filed the request giving rise to the proceedings under review.[5] The mother appeared specially and requested the court to dismiss or quash the order to show cause because the pleadings were defective because of a lack of supporting documents, which, if filed, would show a lack of jurisdiction; because the court was without jurisdiction under the Uniform Child Custody Jurisdiction Act; and because California was an inappropriate forum, so that the action should be dismissed under section 5156 of the Civil Code.

---

[4]In the current year, following the filing of this petition, the father filed a declaration and secured an order to show cause to have the mother found in contempt because allegedly she had threatened to "cut off" all visitation rights of the father. In view of the proceedings in this court we also stayed hearing on that order to show cause. While we may understand, we cannot condone the mother's threat of self-help. It is dealt with below.

[5]In support of his request for change of custody the father alleged:

". . . 4. I have remarried and my wife REGINA is not employed outside the home, whereas I am informed and believe that Respondent is regularly employed outside the home, requiring that the minor TANYA use babysitters.

"5. Petitioner is informed and believed that Respondent's new husband has a drinking problem and that he has had several run-ins with the law.

"6. At one point, when Petitioner exercised his visitation rights, the minor TANYA, was found to have head lice from lack of proper hygienic care.

"7. On each occasion that Petitioner has exercised his visitation rights, the child TANYA's clothing has been dirty, stained, and generally unserviceable, whereupon Petitioner purchased clothing for TANYA.

"8. On the most recent visitation TANYA has indicated to Petitioner that she wanted to stay at his home with and the family [sic].

"9. It is in the best interests of the minor child TANYA to have her custody changed from Respondent to Petitioner."

He also sought an order that the mother pay $50 per month toward the daughter's support. The question of personal jurisdiction over the mother has not been raised at this stage of the proceedings. (See *Titus* v. *Superior Court* (1972) 23 Cal.App.3d 792, 799-805 [100 Cal.Rptr. 477].)

The court, except as noted, made findings in accordance with the facts as set forth above and denied the mother any relief. The petition giving rise to these proceedings was filed. After reviewing the father's opposition (Cal. Rules of Court, rule 56(b)) we issued an alternative writ. By the father's request, his opposition has been treated as a return to the writ, and the matter has been submitted.

I

Civil Code section 4600 provides in part, "In any proceeding where there is at issue the custody of a minor child, the court may, during the pendency of the proceeding, or *at any time thereafter,* make such order for the custody of such child during his minority as may seem necessary or proper. . . ." (Italics added.) The emphasized language in this and prior law (former Civ. Code, § 138) has been construed as follows: "This section has been held to expressly reserve to the California divorce court jurisdiction to modify its custody awards even though the children later become domiciled in another jurisdiction. [Citations.]" (*Forslund* v. *Forslund* (1964) 225 Cal.App.2d 476, 484 [37 Cal.Rptr. 489]. See also *Ferreira* v. *Ferreira* (1973) 9 Cal.3d 824, 838, fn. 18 [109 Cal.Rptr. 80, 512 P.2d 304]; *McDowell* v. *Orsini* (1976) 54 Cal.App.3d 951, 962, fn. 5 [127 Cal.Rptr. 285]; and *Davis* v. *Davis* (1960) 177 Cal.App.2d 75, 77 [1 Cal.Rptr. 923].) As we indicate below (part II), prior to the adoption of the uniform act, the foregoing principle was qualified by application of the doctrine of forum non conveniens. (*Ferreira* v. *Ferreira, supra,* 9 Cal.3d 824, 838, fn. 18; and see Comment (1974) 62 Cal.L.Rev. 365, 391-405.) We first consider, however, the effect of the provisions of the uniform act upon the local court's exercise of jurisdiction.

A reading of paragraph (a) of subdivision (1) of section 5152 (fn. 1 above) alone indicates that Oregon as the "home state" has jurisdiction to make a child "custody determination" by "modification decree."[6]

---

[6] " 'Custody determination' means a court decision and court orders and instructions providing for the custody of a child, including visitation rights; it does not include a decision relating to child support or any other monetary obligation of any person." (§ 5151, subd. (2).)

" 'Decree' or 'custody decree' means a custody determination contained in a judicial decree or order made in a custody proceeding, and includes an initial decree and a modification decree." (*Id.,* subd. (4).)

" 'Initial decree' means the first custody decree concerning a particular child." (*Id.,* subd. (6).)

" 'Modification decree' means a custody decree which modifies or replaces a prior decree, whether made by the court which rendered the prior decree or by another court." (*Id.,* subd. (7).)

That observation, however, does not dispose of this case. The question of modification of a decree of a court of another state is expressly provided for in section 5163, which reads in pertinent part: "(1) If a court of another state has made a custody decree, a court of this state shall not modify that decree unless (a) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this title or has declined to assume jurisdiction to modify the decree and (b) the court of this state has jurisdiction. . . ." Before the Oregon court could act on the matter before the court it would have to find that the California court which rendered the initial decree does not now have jurisdiction under any of the jurisdictional requirements found in section 5152.

The father contends that the provisions of paragraph (b) of subdivision (1) and subdivision (3) of section 5152 (fn. 1 above) demonstrate that the California court does now have jurisdiction to modify its original order. ■ We recognize that the physical presence of the child in Oregon does not deprive the California court of jurisdiction to determine her custody if other factors are present; that the father has a significant connection with this state; and that there is available in this state substantial evidence concerning the child's future care, protection, training and personal relationships insofar as they relate to her father. One question is: Does the child still have a significant connection with this state? A second is: Is there available in this state substantial evidence concerning the child's present care, or, insofar as they might be provided by her mother, the child's future care, protection, training and personal relationships?

The comment, of those who approved the draft of the legislation, on the provisions of paragraph (b) of subdivision (1) (par. (2) of subd. (a) of § 3 of the uniform act), does not throw too much light on the application of the paragraph to the facts of this case.[7] Although the

[7] The "Commissioners' Note" states in part: ". . . [¶] Paragraph (2) [here § 5152, subd. (1)(b)] perhaps more than any other provision of the Act requires that it be interpreted in the spirit of the legislative purposes expressed in section 1. The paragraph was phrased in general terms in order to be flexible enough to cover many fact situations too diverse to lend themselves to exact description. But its purpose is to limit jurisdiction rather than to proliferate it. The first clause of the paragraph is important: jurisdiction exists only if it is in the *child's* interest, not merely the interest or convenience of the feuding parties, to determine custody in a particular state. The interest of the child is served when the forum has optimum access to relevant evidence about the child and family. There must be maximum rather than minimum contact with the state. The submission of the parties to a forum, perhaps for purposes of divorce, is not sufficient without additional factors establishing closer ties with the state. Divorce jurisdiction does not necessarily include custody jurisdiction." (9 U.L.A. (1973) p. 108.)

section purports to deal with modification decrees as well as initial decrees, the comments in general appear addressed to proceedings involving the latter. The comments to section 5163 (§ 14 of the uniform act) also leave a hiatus insofar as the facts of this case are concerned.[8] The examples of loss of jurisdiction given do not embrace the situation where one parent remains in the state issuing the initial decree and enjoys visitation privileges there. That question was resolved by Professor Bodenheimer, the reporter for the committee which prepared the uniform law, as follows: "A typical example is the case of the couple who are divorced in state A, their matrimonial home state, and whose children are awarded to the wife, subject to visitation rights of the husband. Wife and children move to state B, with or without permission of the court to remove the children. State A has continuing jurisdiction and the courts in state B may not hear the wife's petition to make her the sole custodian, eliminate visitation rights, or make any other modification of the decree, even though state B has in the meantime become the 'home state' under section 3. The jurisdiction of state A continues and is exclusive as long as the husband lives in state A unless he loses contact with the children, for example, by not using his visitation privileges for three years." (Bodenheimer, *Uniform Child Custody Jurisdiction Act* (1969) 22 Vand.L.Rev. 1207, 1237.)

In *Smith* v. *Superior Court* (1977) 68 Cal.App.3d 457 [137 Cal.Rptr. 348], this court held that a California court, which had entered the initial custody decree, had jurisdiction to enforce a contempt order against the mother for violation of a modification decree giving the father certain visitation rights, which was entered upon her stipulation at a time when the child's home state was Oregon. There, unlike this case, the mother had appeared and taken part in proceedings before the California court without objecting to the jurisdiction until orders were made which she

---

[8]The "Commissioners' Note" states in part: "Courts which render a custody decree normally retain continuing jurisdiction to modify the decree under local law. Courts in other states have in the past often assumed jurisdiction to modify the out-of-state decree themselves without regard to the preexisting jurisdiction of the other state. [Citation.] In order to achieve greater stability of custody arrangements and avoid forum shopping, subsection (a) declares that other states will defer to the continuing jurisdiction of the court of another state as long as that state has jurisdiction under the standards of this Act. In other words, all petitions for modification are to be addressed to the prior state if that state has sufficient contact with the case to satisfy section 3. The fact that the court had previously considered the case may be one factor favoring its continued jurisdiction. If, however, all the persons involved have moved away or the contact with the state has otherwise become slight, modification jurisdiction would shift elsewhere." (9 U.L.A., *supra*, p. 122.)

failed to obey. Here the mother has promptly objected to the jurisdiction of the local court.[9]

The difficulty of applying the formula suggested by the professor and applied in *Smith* to the instant case lies in the factual situation. If the California court exercises its purported jurisdiction to change the custody of the child, the Oregon court, on the evidence in this case might refuse to recognize or, in turn, might modify the California order. It could find that the initial decree did not involve any exercise of the California court's discretion, but merely adopted the parent's agreement concerning the custody of a child who, according to the mother's affidavit, had no established "home state" since November 1971, and was establishing such status in Oregon. It could also find that California did not qualify for jurisdiction to issue a modification decree because of lack of availability of substantial evidence to make such a change. (See *Brooks* v. *Brooks* (1975) 20 Ore.App. 43 [530 P.2d 547]. Cf. *Fry* v. *Ball* (1975) — Colo. — [544 P.2d 402].) The problem was noted by Professor Bodenheimer as follows: "Consider another illustration: suppose the matrimonial home is in state A, and the husband remains there. The wife and children with the consent of the husband move to state B, which is the wife's former home state and where her parents live. They have been in state B for three months when court proceedings are prepared. Relevant facts about the children's present condition and care are in state B along with some of the facts about the qualifications of one of the potential custodians. State A has the information concerning the past relationship between each parent and the children as well as most of the facts about the other potential custodian. Here again, it will be difficult to decide which state has more of the relevant evidence." (Bodenheimer, *op.cit.*, 22 Vand.L.Rev. at pp. 1222-1223.)

Rather than attempting to resolve the dilemma posed by the particular facts of this controversy we will assume that grounds for the exercise of jurisdiction to make a modification decree exist in both this state and Oregon. The act recognizes that such a situation may exist. Section 5155 provides for resolving such a situation by conferring exclusive jurisdiction on the court in which the matter is first raised.[10] An alternative is

---

[9]*Miller* v. *Superior Court* (Cal.App.) which was also cited to the court was vacated by hearing granted July 21, 1977 (L.A. No. 30816), and cannot assist in interpreting section 5152.

[10]Section 5155 provides in pertinent part: "(1) A court of this state shall not exercise its jurisdiction under this title if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this title, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons. . . ."

offered by section 5156 (fn. 2 above), which authorizes a determination that another state is a more appropriate forum. In our opinion, the trial court erred in failing to make such a determination.

## II

Section 5156 directs the court in this state to consider whether the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in section 5150.[11] (§ 5156, subd. (3)(e), see fn. 2 above.) We believe that the record in this case demonstrates that the state with which Tanya and her family have the closest connection, and where significant evidence concerning her care, protection, training and personal relationship is most readily available is Oregon where she has made her home with her mother for over five years. (See § 5150, subd. (1)(c).) The importance of this purpose is recognized by Professor Bodenheimer, who stated: "As a general proposition the state in which there is the best opportunity to investigate the facts is most yualified to take jurisdiction." (Bodenheimer, *op.cit.*, 22 Vand.L.Rev. at p. 1221.) The same thought has been expressed by another commentator as follows: "All discussions agree that in an interstate custody dispute the interests of the children are paramount. To increase the probability that a custody decision will be in

---

[11]Section 5150 provides:

"(1) The general purposes of this title are to:

"(a) Avoid jurisdiction competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being.

"(b) Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child.

"(c) Assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state.

"(d) Discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child.

"(e) Deter abductions and other unilateral removals of children undertaken to obtain custody awards.

"(f) Avoid relitigation of custody decisions of other states in this state insofar as feasible.

"(g) Facilitate the enforcement of custody decrees of other states.

"(h) Promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child.

"(i) To make uniform the law of those states which enact it.

"(2) This title shall be construed to promote the general purposes stated in this section."

the best interests of the child, the case should be decided in the court with greatest access to the relevant evidence." (Comment (1974) 62 Cal.L.Rev. 365, 371.)

Turning to the other criteria set forth in subdivision (3) of section 5156 (fn. 2 above), we find Oregon is and has been the child's home state for the past five years; Oregon has a closer connection with the child and one of the contestants than does California with the child and the other contestant; as already noted, evidence is more readily available in Oregon concerning the issis raised by the father's request; and there is no agreement as to a forum.

Even before the adoption of the uniform act this state recognized that the doctrine of forum non conveniens should apply to child custody disputes over which the court otherwise had jurisdiction. In *Ferreira* v. *Ferreira, supra,* 9 Cal.3d 824, the father sought relief in California in proceedings in which a modification decree had been entered, upon an initial Idaho decree, at a time when both parents and the children were in California. The mother sought to dismiss the proceedings on the grounds of forum non conveniens because she and the children were residents of Alabama. The court held it was error to dismiss the proceedings, and error to restore custody of the children, whom the father had secured without change of the prior stipulated order, without a hearing on alleged mistreatment. More significantly, insofar as this case is concerned, the court commented on the question of whether the court to which the proceedings were remanded should settle the dispute as to permanent custody or should stay its hand and relegate that dispute to settlement by the courts of a foreign state. The court noted, " '[T]here is no reason why [the] courts of one state should not be able to "assume with confidence that the courts of the other jurisdiction will act with wisdom and sincerity in all matters pertaining to the welfare of this child." (*Miller* v. *Schneider* (Tex.Civ.App.) 170 S.W.2d 301, 303.)' (*Sampsell* v. *Superior Court* (1948) *supra,* 32 Cal.2d 763, 779 [197 P.2d 739].)" (9 Cal.3d at p. 841, fn. 21.) It pointed out that section 410.30 of the Code of Civil Procedure authorizes a motion to stay California proceedings on grounds of forum non conveniens, and that unlike a motion to dismiss on those grounds, it does not require a showing that the party opposing the motion is not a California resident. (*Id.,* p. 841.) So here subdivision (5) of section 5156 provides: "If the court finds that it is an inconvenient forum and that a court of another state is a more appropriate forum, it may dismiss the proceedings, or it may stay the proceedings upon condition that a custody proceeding be promptly

commenced in another named state or upon any other conditions which may be just and proper, including the conditions that a moving party stipulate his consent and submission to the jurisdiction of the other forum."

The *Ferreira* court finalized, "We conclude, therefore, that ordinarily the California court should exercise its discretion to issue a stay of the proceedings in this state to permit a final adjudication in the state of the parent entitled to custody under existing decrees. Having retained jurisdiction of the cause, the California court may then issue its writs to enforce that judgment." (*Id.,* at p. 842.)

We conclude that the trial court abused its discretion in failing to stay the proceedings under the mother's motion raising the issue of inconvenient forum. The proceedings should be stayed upon condition that petitioner, the mother, restore to the real party in interest, the father, until otherwise modified, the reasonable right of visitation in the existing order (see fn. 4 above), and stipulate her consent and submission to the jurisdiction of the appropriate court in Multnomah County, Oregon, and that real party in interest promptly commence appropriate proceedings there to secure the change of custody he requests.

The petition is granted. Let a peremptory writ of mandate issue ordering the respondent court to vacate its order of May 6, 1977, insofar as it denied petitioner any relief under her motion interposed under section 5156 of the Civil Code. The court is directed to grant the motion and stay the proceedings in this state, and take appropriate proceedings under subdivisions (4) and (5) of section 5156, in accordance with the views expressed in this opinion.

Elkington, J., and Weinberger, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.