*In re* CUSTODY OF TODD EHR.—(ALLEN B. EHR, Petitioner-Appellee, *v.* JACKIE M. EHR, Respondent-Appellant.)

Second District   No. 78-249

Opinion filed October 19, 1979.

Richard L. Cooper, of Cooper & Cooper, of Geneva, for appellant.

Patrick J. Dixon, of Murphy, Griffin & Dixon, of Aurora, for appellee.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The respondent, Jackie M. Ehr, appeals from an order which modified a decree of divorce by transferring custody of Todd Ehr, the minor child of the parties, from her to the petitioner, Allen B. Ehr. She raises questions of the jurisdiction of the trial court and alternatively contends that the judgment is against the manifest weight of the evidence.

The parties were married in 1973. Todd, the only child of the marriage, was born November 15, 1974. On November 5, 1975, the marriage was dissolved by a decree in the Circuit Court of Kane County and the custody of Todd was awarded to the respondent-mother. The child lived with her in Kane County until they moved to Texas; and on the mother's petition an agreed order was entered in Kane County on September 17, 1976, permitting respondent to remove the child to Texas with visitation rights being granted to the father. The father filed a motion on December 17, 1976, seeking, among other things, a change in custody. The motion alleged that respondent had "not cooperated in or permitted visitation," had "placed the minor child in an immoral climate" and had "permitted the child to remain unattended and unsupervised." The only evidence presented at the hearing, however, concerned petitioner's plans and capacity to care for the child and his unsuccessful efforts to contact respondent. The trial judge found this insufficient to justify a modification and denied the motion on February 9, 1977.

The petitioner filed another motion for change of custody on October 28, 1977, alleging that respondent led a "vagabond life with no stable residence," resided in a "crowded environment * * * not conducive to early child development", and openly lived with a man in a relationship that is "adulterous and deleterious to the moral education of the child." In support of the allegation of promiscuity, Susan Reichardt testified that she lived with respondent and the child in a mobile home in Aurora from September 19, 1975, until March 1976. She testified that a number of men visited respondent during this time and that respondent had sexual relations with at least two of them on several occasions when the child was present. She also testified that she observed respondent smoking marijuana about six times in the presence of Todd. Respondent admitted to living with her present husband, Kenneth Bufkin, from June 22, 1976, until their marriage in October of 1977.

As to the allegations of a "crowded environment," respondent testified that she and her child shared a two-bedroom, one-bath apartment with four other adults from May 1976 until July 1977. Respondent, her husband and Todd shared one bedroom, while her brother and his wife shared the other bedroom. Respondent's mother slept on the couch. Respondent moved out of the apartment and into a three-bedroom, two-bath home in July 1977. She lived in this home at the time of the hearing with Todd, Kenneth Bufkin and an infant Holly to whom she gave birth in September 1977.

At the conclusion of the hearing, the trial judge found that there had been a change in circumstances and that modification of the original decree was in the child's best interests. An order was entered on October 28, 1977, transferring custody to petitioner from which this appeal has been taken.

Since the petition for modification was filed and heard after October 1, 1977, the case is governed by the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, pars. 801(a), (b)). We therefore consider the question of jurisdiction pursuant to that act. Section 601(a) of the Act (Ill. Rev. Stat. 1977, ch. 40, par. 601(a)) provides that Illinois courts have "jurisdiction to make a child custody determination by initial or modification judgment" if:

"(1) this State is the home state of the child at the time of commencement of the proceedings, or had been the child's home state within 6 months before the commencement of the proceeding and the child is absent from this State because of his removal or retention by a person claiming his custody or for other reason and a parent or person acting as parent continues to live in this State; or

(2) it is in the best interest of the child that a court of this State assume jurisdiction because the child and his parents, or the child

and at least one contestant, have a significant connection with this State, and there is available in this State substantial evidence concerning the child's present or future care, protection, training and personal relationships; or

(3) the child is physically present in this State and has been abandoned, or is neglected or dependent, or it is necessary in an emergency to protect him because he has been subject to or threatened with mistreatment or abuse; or

(4) no other state has jurisdiction under prerequisites substantially in accordance with paragraphs (1), (2) or (3), or another state has declined to exercise jurisdiction on its determination that this State is the more appropriate forum to determine custody of the child; and it is in the child's best interest that the court assume jurisdiction."

Section 601(a) is virtually identical to the Uniform Child Custody Jurisdiction Act (UCCJA) provisions on jurisdiction. (Sec. 3(a)), 9 Unif. Laws Annot. 122 (1979).) Decisions in other States which have adopted the Uniform Act have supported the view that jurisdictional requirements should be met at the time a modification petition is filed even if the same court rendered the original decree. (*In re Marriage of Settle* (1976), 276 Ore. 759, 556 P.2d 962; *Clark v. Superior Court* (1977), 73 Cal. App. 3d 298, 140 Cal. Rptr. 709; *Bosse v. Superior Court* (1979), 89 Cal. App. 3d 440, 152 Cal. Rptr. 665.) While prior legislation in Illinois has been interpreted by Illinois courts to provide continuing jurisdiction with regard to child custody in the court initially entering the custody decree (see, *e.g.*, *Wells v. Wells* (1976), 36 Ill. App. 3d 91, 94), the new act appears to require that jurisdiction must be separately tested in connection with the modification petition by the reference in section 601 to "initial or modification judgment." It would therefore appear that a legislative intention similar to that described in the cases under the Uniform Act would apply.

The intention of the framers of the Uniform Act has been stated:

"That question was resolved by Professor Bodenheimer, the reporter for the committee which prepared the uniform law, as follows: 'A typical example is the case of the couple who are divorced in state A, their matrimonial home state, and whose children are awarded to the wife, subject to visitation rights of the husband. Wife and children move to state B, with or without permission of the court to remove the children. State A has continuing jurisdiction and the courts in state B may not hear the wife's petition to make her the sole custodian, eliminate visitation rights, or make any other modification of the decree, even though state B has in the meantime become the "home state" under section

3. The jurisdiction of state A continues and is exclusive as long as the husband lives in state A unless he loses contact with the children, for example, by not using his visitation privileges for three years.' (Bodenheimer, Uniform Child Custody Jurisdiction Act (1969) 22 Vanderbilt L. Rev. 1207, 1237.)" (*Clark v. Superior Court* (1977), 73 Cal. App. 3d 298, 306, 140 Cal. Rptr. 709, 713.) *Clark* in a footnote also quotes from the "Commissioners' Note" to the Uniform Act as stating in part:

" 'Courts which render a custody decree normally retain continuing jurisdiction to modify the decree under local law. Courts in other states have in the past often assumed jurisdiction to modify the out-of-state decree themselves without regard to the preexisting jurisdiction of the other state. [Citation.] In order to achieve greater stability of custody arrangements and avoid forum shopping, subsection (a) declares that other states will defer to the continuing jurisdiction of the court of another state as long as that state has jurisdiction under the standards of this Act. In other words, all petitions for modification are to be addressed to the prior state if that state has sufficient contact with the case to satisfy section 3. The fact that the court had previously considered the case may be one factor favoring its continued jurisdiction. If, however, all the persons involved have moved away or the contact with the state has otherwise become slight, modification jurisdiction would shift elsewhere.' (9 U.L.A., supra, p. 122.)" *Clark v. Superior Court* (1977), 73 Cal. App. 3d 298, 306 n.8, 140 Cal. Rptr. 709, 713 n.8.

The courts in interpreting the Uniform Act in the light of its purposes and the Commissioners Notes and Comments have found a clear preference for exercising continuing jurisdiction in cases where there is any significant connection remaining with the home State at the time the modification is sought. For example, in *Carson v. Carson* (1977), 29 Ore. App. 861, 565 P.2d 763, 767, *aff'd* (1978), 282 Ore. 469, 579 P.2d 846, a California divorce decree awarded custody to the father. Subsequently, father and child became residents of Oregon, while the mother remained a resident of California. In June 1976, the child was sent to California for an agreed two-month visit with the mother. When the father picked up the daughter to return her to Oregon, he was served with the mother's motion to modify the custody decree in the Superior Court of California. That court granted custody to the mother and four days later the father began custody proceedings in Oregon. In affirming the trial court's declination of jurisdiction, the Court of Appeals of Oregon held that

California had modification jurisdiction due to significant contacts evidenced by the child's two-month visit, the mother's residence, and the original decree having been entered there. See *Fry v. Ball* (Colo. 1975), 544 P.2d 402, 406; *Brown v. District Court* (Colo. 1976), 557 P.2d 384; *Moran v. Moran* (No. Dak. 1972), 200 N.W.2d 263.

■■■ The Illinois Supreme Court has recently concluded that the Illinois Marriage and Dissolution of Marriage Act, as does the Uniform Act, reflects "an underlying policy favoring the finality of child-custody judgments, and making their modification more difficult". (*In re Custody of Harne* (1979), 77 Ill. 2d 414.) Since the purposes of the child-custody provisions in Illinois include both continuity and safeguarding the interests of the child, synonymous with the goals of the UCCJA, section 601 should be interpreted consistent with its purposes. The Act effectuates its goals by placing jurisdiction in the State with the most information about the child and also by limiting custody changes not based on changes in circumstances which severely harm the child. As noted in *Harne*, Illinois law is in full support of the continuity principle since section 610 of the Illinois Marriage and Dissolution of Marriage Act presents stringent demands upon a party seeking a change, from which it follows that the continuing jurisdiction of the rendering court should not be lightly abrogated. See also *Woodhouse v. District Court* (Colo. 1978), 587 P.2d 1199.

■ It appears that in the particular circumstances of this case either Texas or Illinois could have exercised jurisdiction; but no objection was made in the trial court by either party to the exercise of jurisdiction by Illinois. And we conclude that Illinois could properly exercise jurisdiction. The petitioner-father was an Illinois resident when the petition was filed (although he and his new wife were in the process of relocating permanently to Reno, Nevada). Todd was born in Illinois and although he had lived with his mother in Texas for approximately 17 months, a part of that time was spent in Illinois where the father was attempting to involve the Kane County Juvenile Court in the custody dispute. In addition while in Illinois Todd was examined by two doctors and a representative of the Department of Children and Family Services. The Illinois court which had initially allowed the respondent to take the child to Texas had a special competence to decide a modification petition. And the witnesses and much of the evidence were available in Illinois.

While we have concluded that the trial court had jurisdiction, we also conclude that the record requires that the judgment be reversed.

First, we are unable to find any expression in the record which would amount to findings by the trial court on the basis of the criteria set forth in section 610(b)(1), (2) or (3). Of course (1) and (2) are not involved since

the custodian did not agree to the modification and the child has not been integrated into the family of petitioner with the consent of the custodian. The provision of subsection (3) is involved and states:

"(3) the child's present environment endangers seriously his physical, mental, moral or emotional health and the harm likely to be caused by a change of environment is outweighed by its advantages to him." (Ill. Rev. Stat. 1977, ch. 40, par. 610(b)(3).)

It is not clear from the judge's remarks what change of circumstances or other considerations he found controlling. At the close of the evidence the judge said he was "bothered greatly by the fact that the custodial parent has left the State and that visitations are being frustrated." He also said he believed respondent was not telling the truth. The judge repeatedly stated that past misconduct could not be held against a party and claimed to attribute no significance to the mother's alleged promiscuity and marijuana use. The order entered by the judge states only that there exists a change in circumstances and that modification is in the best interests of the child. But there is no evidence that the judge seriously considered subsection (b)(3) or determined that the harm likely to be caused to the child by a change of environment was outweighed by its advantages to him. In *Harne*, the Illinois Supreme Court held that explicit findings were required and that the legislature did not intend to allow modification of child-custody judgment without a finding by the trial court that one of the statutory prerequisites existed. 77 Ill. 2d 414, 421.

In *Harne*, the court noted that subsections of section 610(b) were placed in the statute " 'to serve the basic policy behind the entire section, the policy of custodial continuity' "; and noted that to allow this to be resolved " 'merely by reference to the best interests of the child would seriously weaken the statute.' " 77 Ill. 2d 414, 419.

However, even if we were to find that the order satisfies the requirement that specific findings be made, the judgment, on the whole record, is against the manifest weight of the evidence. According to petitioner, modification was justified on the basis of respondent's alleged promiscuity, marijuana use, "crowded quarters," and her attempts at frustrating petitioner's visitation rights.

Section 610(b)(3), however, requires proof that the child's "present environment" endangers his welfare. The alleged promiscuity and marijuana use all took place between one and two years prior to the hearing with no evidence that it continued to the present. Sexual activity and marijuana use alone are not determinative of a mother's right to continued custody even if proved in terms of present environment absent proof that such conduct had a detrimental effect on the child. (*Nye v. Nye*

(1952), 411 Ill. 408, 415; *Burris v. Burris* (1979), 70 Ill. App. 3d 503, 506; *Soldner v. Soldner* (1979), 69 Ill. App. 3d 97, 103; *Eaton v. Eaton* (1977), 50 Ill. App. 3d 306, 311.) Nor was there any proof of the likelihood of future misconduct. (See, *e.g., Hendrickson v. Hendrickson* (1977), 49 Ill. App. 3d 160, 163.) In this case, the child was no more than 18 months old at the time any of the activity allegedly took place. It is also undisputed that at the time of the hearing respondent was no longer living in "crowded quarters" but was married and living with her two children in a three-bedroom, two-bath home in Texas. There was no evidence that respondent and her husband were financially unable to care for and support the minor child. Also, it was been generally held that the custody of a child should not be awarded because of one parent's conduct in regard to court orders or visitation rights. (*Bulandr v. Bulandr* (1959), 23 Ill. App. 2d 299, 303.) The Commissioners' note on the modification provisions of UCCJA is appropriate here: "If the court overturns its own decree in order to discipline a mother or father, with whom the child had lived for years, for failure to comply with an order of the court, the objective of greater stability of custody decrees is not achieved." 9 Unif. Laws Annot. 155 (1979).

The cause is therefore reversed and remanded with directions to return custody to the respondent-mother. Parenthetically, we also note that the Circuit Court of Kane County should fully consider whether it has jurisdiction of any future proceedings since it appears that the child has been in Nevada for almost two years and there appear to be no present contacts with Illinois.

Reversed and remanded with directions.

GUILD, P. J., and LINDBERG, J., concur.