**In re the MARRIAGE OF Ronald William HUBBARD and Regina Lorrae Hubbard**

**Upon the Petition of Ronald William Hubbard, Appellee,**

**and Concerning Regina Lorrae Hubbard, Appellant.**

**No. 66786.**

Supreme Court of Iowa.

Jan. 20, 1982.

Kathleen S. Bean and Kathleen E. Keest of Legal Services Corp. of Iowa, Des Moines, for appellant.

Donald G. Beattie of Ed Skinner, P.C., Altoona, for appellee.

Considered by LeGRAND, P. J., and McCORMICK, ALLBEE, McGIVERIN and LARSON, JJ.

McGIVERIN, Justice.

Respondent, Regina Lorrae Hubbard, appeals from trial court's modification of a dissolution of marriage decree to change custody of three children from herself to petitioner, Ronald William Hubbard. The appeal raises three issues: 1) Did trial court have jurisdiction under chapter 598A, The Code, The Uniform Child Custody Jurisdiction Act; 2) Was there a sufficient change in circumstances to justify the modification; and 3) Did trial court properly restrict respondent's rights of visitation to the State of Iowa? We resolve the first two issues favorably to petitioner and modify trial court's ruling as to the third.

Petitioner and respondent were married November 16, 1969, in Binghampton, New York. Regina had a child from a previous marriage, Kesia Leigh Hubbard born May 14, 1966. Ronald adopted Kesia during the marriage. Two children were born of the marriage, Ronell Jean Hubbard, born December 15, 1970, and Lloyd William Hubbard, born May 23, 1973.

The marriage was dissolved on January 26, 1976, by decree in Poweshiek County, Iowa District Court. At that time both parties were residents of Grinnell, Iowa. Regina obtained custody of the three children pursuant to a stipulation incorporated into the dissolution decree. She subsequently moved to California with the children and remarried. Petitioner remained in Iowa and also remarried.

Ronald filed a petition for modification of the 1976 dissolution decree on October 12, 1979. He sought to have custody of the three children transferred to him. Regina challenged the subject matter jurisdiction of the Iowa district court, but on January 23, 1981, trial court ruled it had jurisdiction under chapter 598A, The Code. On May 22, after a hearing on the merits of the custody issue, trial court modified the original decree by granting Ronald custody of the three children, terminating his child support obligation to Regina, and allowing her reasonable visitation in Iowa. Regina appeals, but only as to the custody of Ronell and Lloyd.

I. *Subject matter jurisdiction under chapter 598A, The Code.* Regina raises several contentions that trial court did not have subject matter jurisdiction of this custody dispute under chapter 598A, The Code. We find none of these persuasive and affirm trial court's finding that there was subject matter jurisdiction in Iowa.

■ We exercise de novo review of jurisdictional issues raised under chapter 598A.[1] *St. Clair v. Faulkner*, 305 N.W.2d 441, 445 (Iowa 1981). Generally, trial court has continuing subject matter jurisdiction to modify a child custody provision of a dissolution decree. § 598.21, The Code, 1979.[2] However, "[o]rders relating to custody of children shall be subject to the provisions of chapter 598A." § 598.21, The Code 1979.[3]

The basic jurisdictional provision of chapter 598A is section 598A.3 which provides:

1. A court of this state which is competent to decide child custody matters has

1. We have exercised this de novo review in several recent cases. We found that a state other than Iowa had subject matter jurisdiction under the UCCJA in *St. Clair v. Faulkner*, 305 N.W.2d 441, 448 (Iowa 1981); *In re Marriage of Mintle*, 294 N.W.2d 564, 566 (Iowa 1980); *Pierce v. Pierce*, 287 N.W.2d 879, 884 (Iowa 1980); and *Barcus v. Barcus*, 278 N.W.2d 646, 650 51 (Iowa 1979). We found that Iowa did have subject matter jurisdiction in *Slidell v. Valentine*, 298 N.W.2d 599, 605 (Iowa 1980), and *In re Mann*, 293 N.W.2d 185, 187 (Iowa 1980).

2. Section 598.21, The Code 1979 has been amended, effective July 1, 1980. *See* 1980 Iowa Acts, ch. 1175, § 3 (codified at § 598.21, The Code 1981). The continuing subject matter jurisdiction over child custody provisions has been retained. § 598.21(8), The Code 1981.

3. Section 598.21, The Code 1981, also retains the provision for jurisdiction pursuant to chapter 598A. § 598.21(8), The Code 1981.

jurisdiction to make a child-custody determination by initial or modification decree if:

a. This state is the home state of the child at the time of commencement of the proceeding, or had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of removal or retention by a person claiming custody or for other reasons, and a parent or person acting as parent continues to live in this state; or

b. It is in the best interest of the child that a court of this state assume jurisdiction because the child and the child's parents, or the child and at least one contestant, have a significant connection with this state, and there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

c. The child is physically present in this state, and the child has been abandoned or it is necessary in an emergency to protect the child because the child has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or

d. It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs "a", "b", or "c", or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and it is in the best interest of the child that this court assume jurisdiction.

2. Except under paragraphs "c" and "d" of subsection 1, physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child-custody determination.

3. Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine custody.

A key phrase to resolution of the jurisdictional dispute in the present case is "home state" which is defined by section 598A.2:

5. *"Home state"* means the state in which the child, immediately preceding the time involved, lived with the child's parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period.

Regina contends trial court erred by finding it had jurisdiction under "section 598A.3(1)(b) and/or (d)." Upon our de novo review of the record we find trial court did not err.

█ The gravamen of respondent's contention is that California is the home state of the children pursuant to section 598A.2(5), and that California would be the forum with the appropriate jurisdiction for resolution of this modification proceeding. She reasons that if California would have jurisdiction under section 598A.3(1)(a), Iowa cannot have jurisdiction under section 598A.3(1)(d), nor should Iowa exercise its jurisdiction under section 598A.3(1)(b) because it is an inconvenient forum under section 598A.7.[4]

Her argument fails because California is not the home state pursuant to section 598A.3(1)(a). In fact, there is no home state in this case. The record reveals that respondent has moved at least twenty times since the dissolution decree in 1976. The children accompanied her on most of these moves, several of which were interstate. We detail these moves in this division of the

---

4. It has been recognized that concurrent jurisdiction may be possible under the Uniform Child Custody Jurisdiction Act. *Clark v. Superior Ct.*, 73 Cal.App.3d 298, 307, 140 Cal.Rptr. 709, 714 (1977). The inconvenient forum section of the UCCJA, section 598A.7 in Iowa, is to be used to resolve the question of which forum should exercise jurisdiction in such cases. *Id.* at 307–08, 140 Cal.Rptr. at 714; *William L. v. Michele P.*, 99 Misc.2d 346, 351–57, 416 N.Y. S.2d 477, 481–84 (Fa.Ct.1979).

opinion because they relate to jurisdiction under section 598A.3(1)(a), (b) and (d). The moves also relate to the best interests of the children as discussed in division II.

Although there is some conflicting evidence in the record, we find it indicates the following chain of residences, disregarding visitation, for Regina, Ronald and most importantly, the three minor children. At the time of the dissolution decree, January 26, 1976, all five persons were residents of Iowa, living in or near Grinnell. Immediately after the decree Ronell, Lloyd and respondent moved to California. To enable Kesia to finish the school year in Grinnell, she remained in Grinnell under the guardianship of Barbara Cole until July 1976. In July, Kesia joined her two siblings in California where they remained until October, when respondent moved with Tom Dickover, her husband, and the children to Washington. They remained in Washington until July 1978.

In July 1978 Regina and the three minor children moved to Grinnell, Iowa, living there or in nearby towns until September. In September, she returned with the children to Washington where they resided until mid to late April 1979.[5] They then vacationed briefly in Arizona, and moved to California. Kesia left California to live with Ronald in Ankeny, Iowa, in June 1979. Ronell and Lloyd resided in California with respondent until September 1979 when she again moved to Grinnell, Iowa, with the children. Ronell, Lloyd and Regina resided in Grinnell until November when they moved back to California. Kesia has resided with petitioner in Ankeny since June 1979.

Since July 1980 Ronell has resided in Ankeny with petitioner. Lloyd has resided in Ankeny since the May 1981 modification. Respondent continues to reside in California. Petitioner has resided in Iowa since the dissolution decree.

**5.** Trial court found that respondent and the children lived in Washington until after the start of the six month period ending October 12, 1979. We find this is supported by the record, particularly by Kesia's school records which indicate the move from Washington oc-

A. *Section 598A.3(1)(a).* Trial court found that because of the children's move from Washington to California in mid to late April 1979 there was no "home state" within the definition of section 598A.2(5). The record supports this conclusion. The three children did not live with their parents or a parent in any one state for six consecutive months prior to the commencement of this proceeding on October 12, 1979. §§ 598A.3(1)(a); 598A.2(5).

Trial court's finding of no home state is additionally buttressed by our finding that Regina and the children were residents of Iowa for the period from September to November 1979. During this period Regina was employed in Iowa, drew food stamps here and rented living accommodations for herself and the children. She had no home whatsoever in California during this period. The children were enrolled in the Grinnell-Newburg school district.

Because there was no "home state," there was no jurisdiction of this matter pursuant to section 598A.3(1)(a) in either California or Iowa as of October 12, 1979, when this modification action was filed. *Pierce v. Pierce*, 287 N.W.2d 879, 883 (Iowa 1981).

■ B. *Section 598A.3(1)(b).* Respondent contends trial court erred by asserting jurisdiction pursuant to section 598A.3(1)(b), The Code. We disagree. The record is replete with evidence of both significant connections between the children, Ronell and Lloyd, and one, if not both of the parents, and the State of Iowa. Also, there exists substantial evidence concerning the present and future care, protection, training and personal relationships of the children in Iowa. Most, if not all, of the evidence that did exist in California and Washington was produced in Iowa during the proceeding.[6]

curred in the last one half of April, 1979, if not later.

**6.** Several depositions were taken in California pursuant to section 598A.18.

The connection of the children with Iowa included: significant portions of time residing in Iowa with Regina since the decree of dissolution; extended periods of visitation with Ronald; attendance at Iowa schools; and an in-depth exposure to neighbors, friends and family of petitioner and respondent that would render such persons competent to testify on the quality of care the children did and could be expected to receive from either parent. The connection between the parents and Iowa included: extended periods of residency in Iowa; many months of visits by Regina; employment; property ownership; receipt of food stamps and aid to families with dependent children; and exposure to neighbors. The evidence in Iowa included school records, medical records and testimony of friends, neighbors and family regarding both respondent and petitioner and their relationship with the children and parenting abilities.

Trial court properly ascertained that it had jurisdiction under section 598A.3(1)(b).

C. *Section 598A.3(1)(d).* Since we have determined jurisdiction was proper under section 598A.3(1)(b) discussion of section 598A.3(1)(d) is not vital to our affirmance of trial court's jurisdictional determination. However, it is clear that jurisdiction would have been proper under section 598A.3(1)(d). Had this proceeding been brought in California, we believe a court of that state would have declined to exercise jurisdiction pursuant to section 5163 of the California Civil Code (Section 598A.14, The Code). Section 5163 provides:

If a court of another state has made a custody decree, a court of this state shall not modify that decree unless (a) it appears to the court of this state that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this title or has declined to assume jurisdiction to modify the decree and (b) the court of this state has jurisdiction.

Thus, a built-in jurisdictional bias in favor of the decretal state is a feature of the UCCJA. *See William L. v. Michele P.*, 99

Misc.2d 346, 351, 416 N.Y.S.2d 477, 481 (Fam.Ct.1979) (UCCJA states construe the Act to retain the principle of continuing jurisdiction unless contact with the child has virtually ceased) (citations omitted).

Since California would have declined to exercise jurisdiction, it is apparent Iowa would have had jurisdiction under section 598A.3(1)(d). In summary, we affirm trial court's finding of jurisdiction in Iowa over this child custody modification proceeding.

II. *Propriety of modification.* Regina contends trial court erred by modifying the dissolution of marriage decree to place custody of the minor children with Ronald. We find no error.

■■ Our review of the merits of the child custody modification is de novo. *Slidell v. Valentine*, 298 N.W.2d 599, 605 (Iowa 1980). We recently set out the requirements for a modification of child custody provisions of a dissolution decree:

The principal question for us, as it was for the trial court, is whether [the party seeking the custodial change] established by a preponderance of evidence that conditions since the dissolution decree was entered have so materially and substantially changed that the children's best interests make it expedient to [modify custody]. The changed circumstances must not have been contemplated by the trial court when the decree was entered. They must be more or less permanent or continuous, not temporary, and must relate to the welfare of the children. *Hobson v. Hobson*, 248 N.W.2d 137, 139–40 (Iowa 1976). This heavy burden stems from the principle that once custody of children has been fixed it should be disturbed only for the most cogent reasons. *See In re Marriage of Melton*, 256 N.W.2d 200, 205 (Iowa 1977).

*In re Marriage of Mikelson*, 299 N.W.2d 670, 671 (Iowa 1980). The criteria for making child custody decisions apply to modification proceedings. *See id.* at 674. These criteria were detailed in *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974).

■ Our de novo review of the record convinces us that there has been a substantial change in circumstances since the time of the dissolution decree such that it is in the best interests of the children to be placed in the custody of petitioner.

Petitioner's primary allegation of change in circumstances was that respondent "failed to provide adequate nurture and care" for the children such as to "endanger their physical, mental and emotional health." The record indicates that respondent, since the 1976 dissolution, has poorly performed several parental functions. For example, she has neglected the matter of securing a proper education for the children. School records indicate that both Lloyd and Ronell attended classes irregularly. Mary Mead, sister of Regina and a resident of Vallejo, California, testified that when Lloyd stayed with her for two weeks in January 1981, he did not attend school because respondent had said he did not have to and did not arrange for his transportation to school.

Regina's father, Charles Schweitzer, Jr., a California resident, also testified Lloyd had been truant from school. Lloyd testified that he missed school because he would not hear his alarm go off in the morning and since his mother had already left for work she did not secure his attendance. In May 1981, at the time of the hearing on the merits of the modification petition, Lloyd was enrolled in school in California on a conditional basis, due to the fact that he had not yet been properly vaccinated. Lloyd was also improperly immunized in October 1979.

Respondent conceded that her frequent moves had retarded Lloyd and Ronell's academic progress. Lloyd had to repeat kindergarten. Ronell had fallen behind her classmates. Regina has not met her responsibility concerning the education of the children. They have suffered, perhaps irreparably, because of her lack of effort in this regard.

Another area where Regina has failed is in securing proper medical treatment for the children. Ronell suffers from congenital polycystic disease of the kidneys, liver and spleen and hypertension. Regina has neglected to bring both Lloyd and Ronell to scheduled medical examination and treatment appointments. Kesia testified her mother's attention to Ronell's special medical problems was sporadic. Ronell was required to wear diapers at night when a less embarrassing but more effective treatment was available. Lloyd did not receive sufficient dental care while in respondent's custody. Regina's neglect of the children's medical needs was in derogation of her parental duty.

Regina poorly performed her duty to aid the children's proper sexual development. Several incidents of attempted sexual exploitation of Kesia while she was in Regina's custody reflect upon respondent's ability to be the custodial parent. Regina's eighteen year old stepson, Mark, at least one of Regina's paramours and a third adult male were involved in these attempts. Mark also attempted to molest Ronell. Respondent failed to report these incidents to the police and to properly supervise the girls. Regina also engaged in sexual intercourse with numerous men other than her husband, at times in the presence of the children. Lloyd and Ronell need to be protected, not exposed or exploited. Respondent has failed in this regard.

Respondent has not exerted any effort to discipline the children. Numerous witnesses in both California and Iowa testified to the general and total lack of discipline attempted by respondent relative to the children. The children also received little moral training while in Regina's custody.

By almost all accounts Regina was pathetically inept at meeting the basic needs of the children. She was a filthy housekeeper. Her sister, Mary Mead, testified, "I wouldn't even put a pig in [respondent's home]." When respondent resided in a trailer court in Iowa in September and October 1979, her landlady received several complaints from other residents that Regina played a stereo too loudly in the late hours of the night.

She did not provide an adequate amount of clean clothing for the children. The children were often left alone by respondent for an entire day to fend for themselves. The lack of proper attention for the children reached a crescendo in the summer of 1978 when Regina lived with the children and eight other people in a one bedroom apartment in Grinnell. Basically, Lloyd and Ronell have not had their fundamental needs met by Regina.

Respondent has several character defects that have appeared since the dissolution. As previously mentioned, she has engaged in illicit sexual relations in the presence of her children. She has paid bills with insufficient fund checks. She has a reputation for lying and has purchased goods on her father's credit cards without his permission. She has had psychiatric problems. In her favor, however, is the fact that she is presently studying welding and working regularly.

Our de novo review of the record has convinced us that Regina has not properly discharged her duties as custodial parent of the children. This has been a substantial change in circumstances since the custody decree.

Another substantial change since the 1976 decree is the improvement on the part of petitioner in his capacity and desire to be the custodial parent. Then he was an over-the-road trucker with no stable home for the children. In 1976 he acquiesced in the decision that respondent should be the custodian. Since then, however, he has remarried and settled down considerably. Ronald and his wife, Karen, offer a stable home environment for the development and growth of the children free from the strains placed upon them by five chaotic years with their mother. Ronald has a good income from his trucking job. The children relate well to each other and with Ronald and Karen. Both Karen and Ronald have exhibited their love and concern for the children. The good parental qualities of petitioner were exhibited by the record.

Ronald has worked diligently to correct the educational deficiencies of his children.

Kesia is involved in extracurricular activities. Ronell's academic performance improved after she began to reside with petitioner. Karen takes an active interest in the children's schooling.

Ronald has been responsible in securing medical treatment for Ronell. She has been receiving treatment on a regular basis from the University of Iowa Hospitals and Clinics. The children also received more guidance and discipline with petitioner than they did with respondent. Ronell testified she desires to stay with her father. Without unduly extending this opinion, it is clear that petitioner is a parent who is concerned with the children's needs and is responsible in meeting them.

██  We agree with trial court that the circumstances outlined above, both as to respondent and petitioner, represent substantial changes such that it is now in the best interest of the children that they be placed in Ronald's custody.

III. *Visitation.* Regina contends that trial court's allowance of visitation in Iowa is inequitable. We modify trial court's ruling and allow respondent visitation in California. Visitation, like custody, is determined by the best interests of the children. *Willey v. Willey,* 253 Iowa 1294, 1297, 115 N.W.2d 833, 835 (1962). Ordinarily, it is in the child's best interest to have continued association with the non-custodial parent through visitation. *Donovan v. Donovan,* 212 N.W.2d 451, 453 (Iowa 1973). Due to the economic position of the respondent, this continued association will be undermined if visitation is restricted to Iowa. Therefore, we modify trial court's order by allowing visitation, for one month each year during the children's summer vacation period, for Ronell and Lloyd with Regina in California with transportation to be provided or paid for by petitioner, at his option.

In summary, we conclude trial court had subject matter jurisdiction under Chapter 598A, affirm trial court's modification placing custody with petitioner and modify the visitation provisions.

AFFIRMED AS MODIFIED.