In re the MARRIAGE OF Heidi A. LEYDA and Michael D. Leyda.

Upon the Petition of Heidi A. Roach f/k/a Heidi A. Leyda, Appellee,

and Concerning Michael D. Leyda, Appellant.

No. 86–471.

Supreme Court of Iowa.

Jan. 14, 1987.

Daniel L. Bray, Iowa City, for appellant.

Heidi Roach, Niceville, Florida, pro se.

Considered by HARRIS, P.J., and McGIVERIN, LARSON, CARTER and WOLLE, JJ.

CARTER, Justice.

Michael D. Leyda (Michael), the father of Kimberly Leyda (Kim), appeals from an order granting habeas corpus relief to the child's mother in a custody dispute which arose after our September 1984 opinion in *In re Marriage of Leyda,* 355 N.W.2d 862

(Iowa 1984). He also appeals from an order in the parties' dissolution of marriage action dismissing a contempt citation against the mother, Heidi Leyda Roach (Heidi). We reverse and remand with respect to both of the orders which have been appealed.

In our September 1984 opinion, we granted Michael's request to modify the parties' 1982 dissolution decree which gave them joint legal custody of Kim with physical care entrusted to Heidi. Based on what we viewed to be a substantial change of circumstances, we granted sole custody and care of Kim to Michael. This was implemented by a modified decree issued by the district court following issuance of procedendo.

The district court order from which the appeal in *In re Marriage of Leyda*, 355 N.W.2d at 862, was taken had freed Heidi to move to Florida with Kim. That order was not stayed during the pendency of the appeal. Consequently, Kim lived in Florida in Heidi's custody from September 1983 until the time the appeal was decided in September 1984.

In October 1984, Heidi filed an action in the Florida trial court of general jurisdiction requesting a determination that the Iowa judgment granting custody to Michael was void and need not be recognized in Florida or, in the alternative, a decree modifying the Iowa judgment so as to grant Kim's custody to Heidi. An ex parte temporary restraining order was issued by the Florida trial court restraining Michael from removing Kim from Florida.

Michael appeared at a hearing held before the Florida trial court on July 12, 1985. Following the hearing, the Florida trial court replaced the temporary restraining order with another temporary order which incorporated, adopted, and ratified a stipulation entered into by Heidi and Michael in open court. This stipulation recited that Michael, by appearing in the Florida court, submitted to that court's in personam jurisdiction but challenged and would continue to challenge the subject matter jurisdiction of that court to hear the proceeding. The stipulation further recited that Florida was Kim's "home state" under the applicable provision of the Uniform Child Custody Jurisdiction Act enacted in the state of Florida and that both Heidi and Kim had a significant connection with Florida as a result of residency there exceeding one year in duration.

The stipulation further provided:

On a temporary basis, the petitioner, Heidi A. Roach, shall provide the primary physical residence for the minor child of the parties subject to the Respondent's reasonable rights of visitation with the minor child.

With respect to Michael's rights of visitation, the stipulation provided that he

shall have the right to visit with his minor child outside of the presence of the Petitioner and outside the geographical limits of the State of Florida for six weeks during the summer months of 1985, with said six-week visitation period terminating no later than August 21, 1985....

Both parties, by executing this Stipulation acknowledge the provisions of Section 787.04, Florida Statutes, which make it a felony of the third degree to fail to return the minor child to Petitioner's residence in Florida.

With regard to the latter provision of the stipulation, Michael's counsel made the following statement to the Florida trial court at the hearing on the temporary order:

[T]he stipulation in regard to the felony of third degree, which is found in paragraph 9, my client was somewhat concerned about that. But after my advice to him that there was nothing that we could do in regard to stipulation that either adds to or takes away from whatever the law in Florida is regarding it being a felony, [he agreed].

Between the time of the July 12 temporary order of the Florida trial court and August 26, 1985, Michael returned to Iowa with Kim. On August 26, 1985, Heidi filed the petition for writ of habeas corpus which is the subject of this appeal. She

alleged that she was entitled to Kim's custody under the temporary order of the Florida court and that Michael violated that order by not returning Kim to Heidi's Florida residence by August 21, 1985. Subsequently, Michael filed an application in the parties' dissolution of marriage action requesting that Heidi be found to be in contempt for willfully failing to make the child support payments she was ordered to pay in our September 1984 opinion.

The district court, after holding a hearing and conferring with the Florida trial court in apparent reliance on Iowa Code section 598A.7(4) (1985), sustained the writ of habeas corpus. Its written decision bases this determination on two grounds. First, it found that Florida is the state with the closest connection to the child and where more evidence is available concerning the child's present needs. Second, it concluded that Michael had perpetrated a fraud on the Florida court in executing a stipulation which he did not intend to honor. Michael urges that neither of these grounds is sufficient to entitle Heidi to habeas corpus relief.

I. *The Jurisdiction of the Florida Court.*

In seeking reversal of the district court's order, Michael argues the controlling issue is whether he continues to have custody of Kim under the Iowa decree entered in conformance with the procedendo from this court. He urges this question must be answered in the affirmative because the Florida court was without jurisdiction to modify our decree. We refrain from considering whether if the Florida court had jurisdiction to modify our decree it could do so by a temporary order issued prior to adjudication of the merits. We need not reach that issue because we are convinced the Florida court did not have jurisdiction to interfere with the custodial provisions of our September 1984 decision.

The Uniform Child Custody Jurisdiction Act has been enacted in both Iowa and Florida. We recognized in *In re Marriage of Mintle,* 294 N.W.2d 564 (Iowa 1980),

that, under this uniform legislation, two conditions must be satisfied before a court may disturb a custody determination made by a court of another state. These are: (1) the court which rendered the decree must lack jurisdiction (at the time of the requested modification) or decline to exercise jurisdiction, and (2) the court in the foreign state must have jurisdiction under the provisions of the UCCJA. *Id.* at 566. In *Mintle,* we held that the Iowa courts were without jurisdiction to modify a Colorado custody decree because the Colorado courts continued to have jurisdiction to do so and had not declined to exercise such jurisdiction.

We found the Colorado court had continuing jurisdiction in *Mintle* because that state qualified as the "home state" of the child under Iowa Code section 598A.3(1)(a) (1985). Apparently, the district court felt that *Mintle* was inapplicable in the present case because Kim's absence from Iowa for more than a year made Florida her "home state" under the UCCJA. The district court further concluded that Iowa should not exercise continuing jurisdiction under Iowa Code section 598A.3(1)(b) (1985) because it was in the best interests of the child that Florida assume jurisdiction of the modification action. While the district court's ruling might be correct in regard to subparagraph (a), we conclude that it misapplied subparagraph (b).

The most widely cited case on this proposition appears to be *Kumar v. Superior Court,* 32 Cal.3d 689, 652 P.2d 1003, 186 Cal.Rptr. 772 (1982). There a child who was the subject of a New York custody decree had lived with her mother in California for more than a year. The mother petitioned the California courts to modify the New York decree, and the California trial court did. The Supreme Court of California reversed. We quote from that opinion, substituting the corresponding provisions of the Iowa Code for the identical California statutes referred to by the court:

In support of her claim that California has jurisdiction to modify the New York decree, Yvonne relies upon what has

been termed the "myth of concurrent modification jurisdiction." Under Yvonne's analysis, one starts with [section 598A.3] rather than [section 598A.14].... Yvonne then considers which forum has greater connection with the child and concludes, as did the trial court, that California has the "closest" connections.

*Id.* at 698–99, 652 P.2d at 1009, 186 Cal. Rptr. at 778 (citation omitted). In rejecting this contention, the California court observed:

Initial jurisdiction is determined by the guidelines of [section 598A.3], which point to the state with the closest connections to the child and to information about his present and future well-being. *Modification* jurisdiction is perhaps best viewed as an extension of the recognition and enforcement provisions of the Uniform [Child Custody Jurisdiction] Act. California is not effectively enforcing the New York decree if it modifies the decree as soon as the child has spent six months within its borders.

*Id.* at 699, 652 P.2d at 1009, 186 Cal.Rptr. at 778 (citation omitted).

As support for these conclusions, the California court quotes extensively from an article prepared by the reporter for the special committee which drafted the Uniform Child Custody Jurisdiction Act. In this article, the author states:

Exclusive continuing jurisdiction is not affected by the child's residence in another state for six months or more. Although the new state becomes the child's home state, significant connection jurisdiction continues in the state of the prior decree where the court record and other evidence exists and where one parent or another contestant continues to reside. Only when the child and all parties have moved away is deference to another state's continuing jurisdiction no longer required.

Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction Under the UCCJA,* 14 Fam.L.Q. 203, 214–15 (1981).

■ The *Kumar* decision has been approved and followed by the courts of several states. *Hamill v. Bower,* 487 So.2d 345, 347–48 (Fla.Dist.Ct.App.1986); *Funk v. Macaulay,* 457 N.E.2d 223, 227 (Ind.Ct. App.1983); *Clarke v. Clarke,* 126 N.H. 753, 758, 496 A.2d 361, 364 (1985); *Neger v. Neger,* 93 N.J. 15, 31, 459 A.2d 628, 636 (1983). We are convinced that these decisions express the correct interpretation of the UCCJA. Because the courts of this state have continuing jurisdiction to modify the 1984 decree fixing Kim's custody and have not declined to exercise that jurisdiction, the Florida court, under the preferred interpretation of the UCCJA, was without jurisdiction to transfer custody, even temporarily, from Michael to Heidi. *See Mintle,* 294 N.W.2d at 566.

■ An equally persuasive reason for concluding the Florida court was without jurisdiction is the preemptive effect which must be accorded the Federal Parental Kidnapping Prevention Act of 1980, 28 U.S.C. § 1738A (1983). The provisions of this federal legislation indicate a congressional intent that the act be applied in all interstate custody disputes. State courts considering the question have held the federal legislation preempts state law in determining when jurisdiction may be exercised in interstate custody matters. *Ex parte Lee,* 445 So.2d 287, 290 (Ala.Civ.App.1983); *In re Marriage of Pedowitz,* 179 Cal.App.3d 992, 999, 225 Cal.Rptr. 186, 189 (1986); *Tufares v. Wright,* 98 N.M. 8, 10, 644 P.2d 522, 524 (1982); *Voninski v. Voninski,* 661 S.W.2d 872, 876 (Tenn.Ct.App.1982); *Arbogast v. Arbogast,* 327 S.E.2d 675, 679 (W.Va.1984). The federal statute uses language more specific than the UCCJA in limiting modification jurisdiction. The controlling language is as follows:

The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section [that that court has jurisdiction under its own law] continues to be met and

such State remains the residence of the child *or of any contestant.*

28 U.S.C. § 1738A(d) (emphasis added). In the present case, one of the contestants (Michael) was at all times a resident of Iowa.

■ Both the UCCJA and the Federal Parental Kidnapping Prevention Act of 1980 lead to the conclusion that Michael's rights under the Iowa decree are unaffected by the order of the Florida court. The district court erred in granting the petition for writ of habeas corpus.

■ Another basis for the district court's order was its belief that Michael had perpetrated a fraud on the Florida court by entering into a stipulation he did not intend to honor. Any improper conduct by Michael in this regard is doubtless a factor which should be considered in determining whether he is a proper custodian for Kim. There is, however, no application for change of custody pending in a court with jurisdiction. Michael's conduct before the Florida court does not ipso facto undo the terms of our existing custody order. Heidi's petition for writ of habeas corpus was based on the temporary order of the Florida court which was issued as a result of the stipulation. It suffers from an infirmity in that court's subject matter jurisdiction. Michael preserved his right to challenge that jurisdiction in the stipulation giving rise to the order.

II. *Modification Jurisdiction of the Iowa Court.*

■ As we have noted, Heidi's pending action for modification in Florida also asserts the Iowa courts were without jurisdiction in 1984 to modify the custody provisions of the parties' 1982 dissolution of marriage decree. The limitations which the UCCJA and the Federal Kidnapping Prevention Act place on a court's jurisdiction to modify a foreign child custody decree do not touch upon a court's jurisdiction to permit a collateral attack upon a foreign decree.

■ At the time of the district court's action on the petition for writ of habeas corpus, the Florida court had not acted upon Heidi's efforts to collaterally attack our 1984 custody decision. Although we see no reason to consider this issue, we note that, at the time Michael's application to modify the original dissolution decree was filed, both he and Heidi were Iowa residents. Kim had never lived anywhere else. The application for modification was Michael's response to Heidi's request that the Iowa court permit her to move to Florida with Kim. We therefore see no basis for Heidi's assertion that either subject matter or personal jurisdiction was lacking in the proceedings which led to the custodial disposition made by this court in 1984.

III. *The Contempt Citation.*

■ The district court's dismissal of the pending contempt citation against Heidi for failure to pay child support as required in our September 1984 opinion was based on its belief that Michael had stipulated to such disposition in the event that the writ of habeas corpus was granted. Because the order sustaining the writ is now reversed, we conclude that the contempt citation should be reinstated. We have considered the issues presented and conclude that the order of the district court sustaining the writ of habeas corpus should be reversed. That proceeding is remanded for an order annulling the writ. The order dismissing the contempt citation is also reversed, and the matter is remanded to the district court for further proceedings.

REVERSED AND REMANDED.