**In re the MARRIAGE OF Debra M. CERVETTI and Ronald G. Cervetti.**

**Upon the Petition of Debra M. Moore f/k/a Debra M. Cervetti, Appellant,**

**And Concerning Ronald G. Cervetti, Appellee.**

No. 92–1294.

Supreme Court of Iowa.

March 24, 1993.

Rehearing Denied April 19, 1993.

Timothy S. White and Deborah J. Hughes of White & Johnson, P.C., Cedar Rapids, for appellant.

Jay A. Nardini of Ball, Kirk, Holm & Nardini, P.C., Waterloo, for appellee.

Considered by McGIVERIN, C.J., and LARSON, LAVORATO, NEUMAN, and ANDREASEN, JJ.

NEUMAN, Judge.

This case reaches us following the district court's denial of petitioner's pre-answer motion to dismiss on jurisdictional grounds. The question is whether the Iowa district court should exercise jurisdiction in this child custody modification action, or defer to the children's home state of North Carolina. We granted interlocutory appeal to consider petitioner's challenge to the district court's decision and now reverse.

The dispositive facts are not in controversy. Debra and Ron Cervetti were divorced in Black Hawk County, Iowa, on March 9, 1989. Their three daughters—then aged seven, six and three—were placed in the parties' joint legal custody with Debra giv-

en their primary care. It was anticipated at the time of the decree that Debra, an engineer, would move away from Iowa to pursue better career opportunities elsewhere. Thus the dissolution decree specifically retained jurisdiction in the Iowa district court to adjust visitation in that event.

In March 1990 Debra and the children moved to North Carolina. On Ron's motion, the court modified the dissolution decree to permit Ron seven weeks visitation in the summer, one-half of the Christmas and spring breaks, and other visitation throughout the year not to exceed five days at a time. The girls have traveled frequently to Iowa to enable Ron to exercise these visitation privileges.

Debra and the children have lived continuously in North Carolina since March 1990. Ron, a physician, remarried in 1990. Debra remarried in March 1992.

The current controversy began in June 1992 just prior to the girls' summer visit with Ron. Ron filed a petition in the Iowa district court to modify the custody provisions of the parties' dissolution decree. Debra, personally served in North Carolina, responded with a pre-answer motion to dismiss for lack of Iowa subject matter jurisdiction under the Uniform Child Custody Jurisdiction Act, Iowa Code chapter 598A (1991) (hereafter "UCCJA"). Following hearing, the district court denied Debra's motion.

Later in the summer Ron sought an ex parte order for the girls' temporary custody based on allegations of abuse surrounding Debra's use of corporal punishment. Although the district court granted the ex parte order, it later reversed its decision upon full hearing and directed that the children be returned to Debra's care in North Carolina. Meanwhile we granted Debra's application for interlocutory appeal to consider her jurisdictional challenge in the pending modification proceeding.

The jurisdictional dispute centers on the tension between Iowa's role as the "decree" state and North Carolina's status as the girls' "home state." Ron convinced the district court that the UCCJA—and our cases interpreting it—reveal a jurisdictional bias favoring the decree state so long as any continuing contact with that state can be shown. Debra urges reversal on the ground that the jurisdictional decision is not automatic and should be made in accordance with section 598A.3 of the UCCJA which lists factors to be considered whether "by initial *or* modification decree." (Emphasis added.) *Even if a decree state preference exists,* she argues, it would be outweighed in this case by the fact that all of the girls' significant relationships with respect to school, church, friends, medical care and family life are now established in North Carolina.

■ I. Our resolution of this controversy is guided by well-settled principles. First, our scope of review differs in this case from that customarily associated with jurisdictional disputes. Because the underlying action involves child custody, equitable principles apply and our review is de novo. *St. Clair v. Faulkner,* 305 N.W.2d 441, 445 (Iowa 1981). The fundamental question of which state is best suited to resolve custody quickly, permanently, and on the merits, is decided by us anew. *Id.*

■ Second, Iowa cases reflect an undeniable bias favoring continuing jurisdiction of the decree state when modification is sought. *In re Marriage of Leyda,* 398 N.W.2d 815, 819 (Iowa 1987); *In re Marriage of Hubbard,* 315 N.W.2d 75, 80 (Iowa 1982); *Pierce v. Pierce,* 287 N.W.2d 879, 883 (Iowa 1980); *In re Marriage of Ross,* 471 N.W.2d 889, 892 (Iowa App.1991); *In re Marriage of McEvoy,* 414 N.W.2d 855, 857 (Iowa App.1987). The children's residency in another state for more than six months does not diminish the preference. *Leyda,* 398 N.W.2d at 819; *Ross,* 471 N.W.2d at 892. The rule stems from a belief expressed by the UCCJA drafters that greater stability in custody arrangements will be achieved, and forum shopping minimized, by faithful adherence to the preference. Uniform Child Custody Jurisdiction Act § 14 cmt., 9 U.L.A. 292 (1988).

The UCCJA reinforces this preference by providing that a court of this state *shall*

*not* modify the decree of another state unless the decree state no longer retains jurisdiction under standards comparable to our own, or declines jurisdiction. Iowa Code § 598A.14. Similarly, the Federal Parental Kidnapping Prevention Act of 1980, 28 U.S.C. § 1738A(d) (1990), states that jurisdiction in the decree state continues as long as that state has jurisdiction under its own law and either contestant or the child still resides there. Although no other state is asserting jurisdiction here, the preemptive spirit underlying these statutes is widely recognized as a means of protecting the exclusive jurisdiction of the decree state. *Leyda,* 398 N.W.2d at 819.[1]

■ II. Despite the strength of this decree state bias, common sense suggests that, over time, a child's ties to the decree state may become too tenuous to justify continuing jurisdiction. The question is at what point the link is broken. One frequently quoted commentator goes so far as to suggest that "[c]ontinuing jurisdiction ends *only* if all the parties and the child have taken up residence in other states, or if the state of the decree has declined to modify its modification jurisdiction...." Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction Under the UCCJA,* 14 Fam.L.Q. 203, 204–05 (1981) (emphasis added). A more moderate position is reflected in the UCCJA commentary which notes that "all petitions for modification are to be addressed to the prior state *if that state has sufficient contact with the case to satisfy section [598A.]3*." Uniform Child Custody Jurisdiction Act § 14 cmt., 9 U.L.A. 292 (1988) (emphasis added). Prior decisions in this state echo this view that if the factors of section 598A.3 are not met, a state can no longer exercise jurisdiction despite its status as the decree state. *See Pierce,* 287 N.W.2d at 833; *Slidell v. Valentine,* 298 N.W.2d 599, 602 (Iowa 1980); *S.R. by M.J.R. v. M.R.,* 401 N.W.2d 221, 224 (Iowa App.1986).

III. Appellant argues forcefully that the jurisdictional prerequisites of section 598A.3 are not satisfied in this case. In the alternative she contends Iowa is an inconvenient forum as that concept is defined by Iowa Code section 598A.7. We shall consider the arguments in turn.

■ A. *Section 598A.3 factors.* Clearly Iowa is not the Cervetti children's "home state." *See* Iowa Code § 598A.2(5) (defining "home state" as that place in which child lived for at least six consecutive months preceding the time involved); § 598A.3(1)(a) (citing "home state" status as one of four alternate grounds for jurisdiction). Debra urges that neither can Iowa satisfy the "best interest" alternative of section 598A.3(1)(b): whether the children and at least one contestant "have a significant connection with this state, and there is available in this state substantial evidence concerning the child[ren's] present or future care, protection, training and personal relationships."

The district court rejected Debra's contention, concluding that Ron and the girls enjoy a "significant connection" with Iowa and "substantial evidence" could be found here to support his claim. Considered as a response to whether Iowa has been *divested* of jurisdiction, the court's analysis cannot be faulted. Given Iowa's preferred status as the decree state, Ron's residence here, the girls' regular visits, and their ongoing relationship with extended family here, the minimum requirements for jurisdiction under section 598A.3 are arguably satisfied.

■ B. *Inconvenient forum.* The question remains whether Iowa, secure in its jurisdiction under section 598A.3, should nevertheless decline its authority to decide this case in keeping with section 598A.7. That section provides that a court with jurisdiction may decline to act if another state is a more appropriate forum and this is an inconvenient one, taking into account the following factors:

1. This ideal of decree state exclusivity renders the notion of "concurrent jurisdiction" among states a myth. *Leyda,* 398 N.W.2d at 819. Any suggestions to the contrary in the earlier case of *Hubbard,* 315 N.W.2d at 78 n. 4, or in the subsequent court of appeals cases of *Ross,* 471 N.W.2d at 891, and *McEvoy,* 414 N.W.2d at 857, are inconsistent with *Leyda's* holding.

a. Whether another state is or recently was the child's home state.

b. Whether another state has a closer connection with the child and the child's family or with the child and one or more of the contestants.

c. Whether substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state.

. . . .

e. Whether the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in section 598A.1.

Iowa Code § 598A.7(3). Clearly the decision calls for an evaluation of the interests at stake in light of the overarching purpose of the UCCJA. *Slidell,* 298 N.W.2d at 602. Under the announced purposes of chapter 598A, courts must

[a]ssure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and the family have *the closest connection* and where significant evidence concerning the child's care, protection, training, and personal relationships is *most readily available,* and that courts of this state decline the exercise of jurisdiction when the child and the family have *a closer connection* with another state.

Iowa Code § 598A.1(3) (emphasis added).

■ Our de novo review of the record convinces us that North Carolina, not Iowa, is the state presently having the most significant connection with this case and holding the most substantial evidence about the children's welfare. Our decision rests primarily on the posture in which a modification action reaches the court. The threshold question is always whether conditions since the dissolution decree was entered have so materially and substantially changed that the best interests of the children compel a change in custody. *Hubbard,* 315 N.W.2d at 82. The object of the examination is not to relitigate matters settled at the divorce but to decide whether circumstances have materially changed since that time. To answer the question, the court must assess the current situation and project into the future.

Any accurate assessment of the Cervetti girls' current circumstances must necessarily focus on their life in North Carolina. Indeed, evidence concerning the primary targets of Ron's criticism—the adequacy of their schooling and their church affiliation—are solely to be found there. Evidence concerning Debra's parenting practices—and their impact on the children—rests almost exclusively there as well. Although Ron seeks to emphasize the life the girls once enjoyed in Iowa and could enjoy here in the future, that is not the focus of the inquiry in a modification proceeding. It was clearly anticipated when the marriage was dissolved that the children would probably not be raised in Iowa.

On the question of convenience in litigating the issues, the girls' physical location in North Carolina and the parties' disparate incomes militate strongly in Debra's favor. It would be both unnecessarily disruptive to the girls and financially burdensome for Debra to defend Ron's allegations here.

In summary, we are convinced that the district court placed too much emphasis on Iowa's status as the decree state and too little emphasis on the role people and institutions situated in North Carolina now play in these children's lives. As aptly stated by the appellant, these girls *visit* in Iowa, they *live* in North Carolina. Their fate should be decided there. Although the Iowa district court could exercise jurisdiction in this case, it should have declined to do so. The decision of the district court is therefore reversed and this case is remanded for dismissal.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**