Peter STAUFFER, Petitioner–Appellee,

v.

Brittney TEMPERLE, Respondent–Appellant.

No. 10–0352.

Court of Appeals of Iowa.

Nov. 24, 2010.

Gregory A. Johnston, Muscatine, for appellant.

Robert DeKock of DeKock Law Office, P.C., Muscatine, for appellee.

Heard by MANSFIELD, P.J., and DANILSON and TABOR, JJ.

DANILSON, J.

Brittney Temperle appeals the denial of her motion to dismiss Peter Stauffer's application for modification. This appeal requires us to determine if either a temporary order, which is later dismissed, or a temporary order, which is now moot, constitute an initial custody determination upon which continuing and exclusive jurisdiction may derive under Iowa Code section 598B.202 (2009). Because the child's home state was Texas, and we conclude that neither temporary order can be characterized as an initial child-custody determination under these circumstances, the district court lacked jurisdiction to consider Stauffer's application for modification. We reverse.

## I. Background Facts and Proceedings.

Brittney Temperle (formerly Brittney Belknap) and Peter Stauffer have a son, J.S., born in May 2005. Temperle and Stauffer were never married. Paternity was established upon a State-initiated paternity and support action. Stauffer pays $295 per month in child support.

Stauffer filed a petition (DRCV016519) for custody and visitation in February 2006 when both he and Temperle resided in Iowa. In March 2006, an order was filed approving the parties' agreement concerning temporary matters. The order awarded temporary joint legal custody with temporary primary physical care to Temperle. About seven months later on October 31, 2006, an order was filed indicating the case had been settled following an August 3 settlement conference. However, because a decree had not been entered, the order provided that the action would be dismissed on November 28 "unless an order to the contrary is entered prior to that time." The case was dismissed on November 28, 2006, without a permanent custody and visitation order or decree being filed.

The same parties initiated a new action on June 24, 2008, by the filing of a consent order (DRCV018322). The only subject of the consent order was summer visitation in 2008. The consent order stated J.S. "currently resides with his mother, Brittney Temperle"; "Brittney's husband is in the military and is currently stationed in Killeen, Texas"; and "[t]he parties desire [J.S.] spend one month with his father." The court ordered one month of summer visitation and required Stauffer to return J.S. to the child's grandparents' residence in Muscatine on or before July 26, 2008.

On November 5, 2009, Stauffer filed an "Application for Modification" in the consent order case (DRCV018322), asserting Stauffer resided in Muscatine, Iowa, and

was unaware of the dismissal of his custody case; the parties had "continued to honor" the temporary custody and visitation order of March 2006; "near Easter of 2008" Temperle moved to Texas; the June 2008 "consent order does not deal with the issue of custody nor does it deal with the issue of visitation"; and "the forgoing constitutes a substantial change in circumstances meriting a modification" of the consent order. Stauffer requested that he be granted joint legal custody and asked the court to determine physical care. Temperle challenged the district court's jurisdiction, contending Iowa was not J.S.'s home state.

On December 23, 2009, a hearing was held at which Temperle testified she moved to Texas with J.S. in February 2008, she was married in March 2008, and she and her husband have lived in Texas since 2008.[1] Temperle's husband is in the military and was then stationed in Texas, but was to report to a new assignment in Louisiana in March 2010. She also testified she flew to Iowa on October 28, 2009, and was visiting her parents until after New Year's.

The district court ruled there had been "at least two initial custody determinations" concerning J.S.: (1) the March 2006 temporary custody and visitation order filed in the dismissed action for custody and visitation (DRCV016519), when Iowa was the child's home state and (2) the June 2008 consent order (DRCV18322), which provided that the child "resides with his mother." The district court observed that the child's home state in June 2008 continued to be Iowa as the child had not yet lived in Texas for six months at that time. "Therefore, Iowa has exclusive, continuing jurisdiction." The court found no basis existed in Iowa Code section 598B.202[2] to interrupt Iowa's continuing jurisdiction. The district court also rejected Temperle's inconvenient forum claim.

The court stated:

In making this decision, the court relied primarily on its analysis that either the temporary visitation order entered in cause number DRCV016519 or the consent order entered in this case were initial determinations such as to provide the court with exclusive, continuing jurisdiction.

Temperle appeals, arguing: (1) a support order is not an initial determination of child custody and does not confer jurisdiction on Iowa courts to adjudicate custody

---

1. J.S. resides with Temperle, her husband, and a four-month-old child they have together. Temperle also has an older daughter who resides in Muscatine, Iowa, with Temperle's mother.

2. Section 598B.202 provides:
　　1. Except as otherwise provided in section 598B.204 [temporary emergency jurisdiction], a court of this state which has made a child-custody determination consistent with section 598B.201 [initial child-custody jurisdiction] or 598B.203 [jurisdiction to modify] has exclusive, continuing jurisdiction over the determination until any of the following occurs:
　　　　a. A court of this state determines that the child does not have, the child and one parent do not have, or the child and a person acting as a parent do not have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships.
　　　　b. A court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.
　　2. A court of this state which has made a child-custody determination and does not have exclusive, continuing jurisdiction under this section may modify that determination only if it has jurisdiction to make an initial determination under section 598B.201.

and visitation rights; (2) the case in which a temporary custody and visitation order was filed was dismissed and is a legal nullity; and (3) in any event, Iowa is an inconvenient forum.

## II.  Scope and Standard of Review.

■ The primary question on appeal is one of jurisdiction, but the underlying action involves child custody and, consequently, equitable principles apply and our review is de novo. *In re Marriage of Cervetti*, 497 N.W.2d 897, 899 (Iowa 1993). In dealing with chapter 598B—the Uniform Child–Custody Jurisdiction and Enforcement Act (UCCJEA)—"[t]he fundamental question of which state is best suited to resolve custody quickly, permanently, and on the merits, is decided by us anew." *Id.* The question whether a court has subject matter jurisdiction may be raised at any time and is not waived even by consent. *In re Jorgensen*, 627 N.W.2d 550, 554 (Iowa 2001).

## III.  Has There Been an Initial Child–Custody Determination?

The district court based its conclusion of exclusive, continuing jurisdiction upon a finding that there has been "at least two initial custody determinations." In reaching its conclusion, the district court recognized that the necessary predicate to jurisdiction is a finding that a court of Iowa "has made a child-custody determination." Iowa Code § 598B.202 ("Except as otherwise provided in section 598B.204, a court of this state which has made a child-custody determination consistent with section 598B.201 or 598B.203 has exclusive, continuing jurisdiction over the determination until any of the following occurs . . . ."). We do not agree, however, that either the temporary visitation order entered in case number DRCV016519, or the consent order of June 2008, was an "initial child-custody" determination upon which to premise exclusive, continuing jurisdiction under these facts.

*A.  Temporary custody order.*  In Iowa, the mother of a child born out of wedlock has sole custody of the child unless a court orders otherwise. Iowa Code § 600B.40. Stauffer filed an action for custody and visitation in 2006. At that time, both parents and the child resided in Iowa.

"[T]he exclusive jurisdictional basis for making a child-custody determination by a court of this state," is set forth in subsection 1 of 598B.201. Iowa Code § 598B.201(2). Section 598B.201(1) provides:

> Except as otherwise provided in section 598B.204 [temporary emergency jurisdiction], a court of this state has jurisdiction to make an *initial child-custody determination only if* any of the following applies:
>
> a.  This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state.
>
> b.  A court of another state does not have jurisdiction under paragraph "a", or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under section 598B.207 or 598B.208 and both of the following apply:
>
> > (1) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence.

(2) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships.

c. All courts having jurisdiction under paragraph "a" or "b" have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under section 598B.207 or 598B.208.

d. No court of any other state would have jurisdiction under the criteria specified in paragraph "a", "b", or "c".

We have no doubt that if Stauffer's action initiated by his petition for custody, visitation, and support[3] had proceeded to a final decision, it would have constituted an initial child-custody determination because Iowa was the child's home state, *id.* § 598B.201(1), and the Iowa court had subject matter jurisdiction to make a child-custody determination. *See Montgomery v. Wells*, 708 N.W.2d 704, 707 (Iowa Ct. App.2005) (noting that chapter 600B confers subject matter jurisdiction upon the district court to decide cases of paternity, custody, visitation and support between unmarried parties and section 600B.40 grants the district court authority to determine matters of custody and visitation as it would under Iowa Code section 598.41).

It is also true that a temporary order is included in the definition of a "child-custody determination."[4] Iowa Code § 598B.102(3). But, to invoke exclusive, continuing jurisdiction, there must have been an "initial" child-custody determination previously made. *Id.* § 598B.202 (stating, "a court of this state which has made a child-custody determination *consistent with section 598B.201* [initial child-custody jurisdiction] ... has exclusive, continuing jurisdiction over the determination until any of the following occurs ....."); *see also St. Clair v. Faulkner*, 305 N.W.2d 441, 448 (Iowa 1981); *cf. Harshberger v. Harshberger*, 724 N.W.2d 148, 156–57 (N.D.2006) (concluding jurisdiction did not exist for former husband's North Dakota paternity action seeking only paternity testing because it could not be characterized as a request for custody or visitation, nor could the paternity action serve as a basis for a subsequent motion to establish visitation filed in the same action to relate back to the filing of the complaint and to artificially create a jurisdictional basis under UCCJEA).

■ Here the temporary custody order was filed in a case that was dismissed without a "determination" or the entry of a permanent custody and visitation decree. Such a dismissal is not an adjudication on the merits and "leaves the parties as if no action had been instituted." *Pollock v. Deere & Co.*, 282 N.W.2d 735, 738 (Iowa 1979) (quoting *Windus v. Great Plains Gas*, 254 Iowa 114, 124, 116 N.W.2d 410, 415 (1962)).

■ Temporary orders may be modified but only "continue in force and effect until the action is dismissed or a decree is entered." Iowa Code § 598.11(2). Temporary orders are subsumed in a final custody determination and are not judgments that can be separately enforced thereafter. *In re Marriage of Denly*, 590 N.W.2d 48, 50 (Iowa 1999) ("Temporary custody or-

---

3. Case No. DRCV016519.

4. Section 598B.102(3) provides:

"*Child-custody determination*" means a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child. The term includes a permanent, temporary, initial, and modification order. The term does not include an order relating to child support or other monetary obligation of an individual.

ders, however, are subsumed in the final custody determination and are not judgments that can be separately enforced."). Although the temporary order in DRCV016519 was not subsumed, the action was dismissed, and the temporary order had no further force or effect. *See St. Clair,* 305 N.W.2d at 448 (dismissing child-custody action upon finding that Iowa was not home state and noting "[w]ith dismissal of the action, the temporary order also falls"); *accord In re Parentage, Parenting, & Support of A.R.K.-K. & N.J.K.,* 142 Wash.App. 297, 174 P.3d 160, 164 (Wash. Ct.App.2007) (rejecting argument that expired, Washington temporary domestic violence protection order could serve as basis for exclusive, continuing jurisdiction under UCCJEA stating, "a temporary order can confer only temporary jurisdiction, because an expired order has no continuing force or effect"); *see also Swalef v. Anderson,* 50 Va.App. 100, 646 S.E.2d 458, 461 n. 3 (Va.Ct.App.2007) ("We note ... that it would be inconsistent with the purposes of the [UCCJEA] to find that a vacated and terminated temporary order, where the underlying petition is dismissed, is a 'child custody determination'....").

Stauffer states that the temporary order "was treated by the parties as a determination of child custody." Even if true, the lack of a valid existing prior court order here precludes a finding of jurisdiction. *See* Iowa Code § 598B.106 ("A child-custody determination *made by a court of this state that had jurisdiction* under this chapter binds all persons ...." (emphasis added)); *see also McKee v. Dicus,* 785 N.W.2d 733, 737 (Iowa Ct.App.2010) ("[W]here there has been no prior custody order, we conclude the proper course of action is not to treat the proceeding as a modification, but rather to consider the

previous pattern of caregiving an important factor in an initial custody determination.").[5]

■ Jurisdiction under the UCCJEA cannot be conferred by agreement, consent, or waiver. *See Walsh–Stender v. Walsh,* 307 S.W.3d 127, 130 (Ky.Ct.App. 2009); *Foley v. Foley,* 156 N.C.App. 409, 576 S.E.2d 383, 385 (N.C.Ct.App.2003); *Harshberger,* 724 N.W.2d at 153; *Rosen v. Rosen,* 222 W.Va. 402, 664 S.E.2d 743, 749–50 (W.Va.2008); *see also* Unif. Child Custody Jurisdiction & Enforcement Act § 201 cmt. 9, U.L.A. 673 (1999) ("Since jurisdiction to make a child custody determination is subject matter jurisdiction, an agreement of the parties to confer jurisdiction on a court that would not otherwise have jurisdiction under this Act is ineffective.").

■ *B. Consent order.* Stauffer's application for modification was filed in DRCV018322, which contains a single filing—a June 2008 consent order. The consent order dealt with a one-month visitation period. This, too, constituted a temporary order. *See* Iowa Code § 598B.304 (granting jurisdiction to enter temporary visitation orders and noting the "order remains in effect until ... the period expires"). By its terms there was nothing left for the court to do after July 26, 2008. After that date, an application to modify the summer visitation was moot. "The test is whether a judgment, if rendered, would have any practical legal effect upon the existing controversy." *Junkins v. Branstad,* 421 N.W.2d 130, 133 (Iowa 1988); *accord Lewis Invs., Inc. v. City of Iowa City,* 703 N.W.2d 180, 183 (Iowa 2005). Thus, after the summer of 2008, the issue became moot as there was no "determination" of child-custody still in existence to modify.

---

**5.** Because Stauffer's application for modification was not considered as an initial custody determination by the district court, we decline to consider whether subject matter jurisdiction existed on this basis.

We conclude neither the 2006 temporary order nor the 2008 consent order on which the district court relied constituted an initial child-custody determination to afford subject matter jurisdiction for the pending application for modification. The district court erred in concluding otherwise. Absent the predicate custody determination, the district court did not have "exclusive, continuing jurisdiction" pursuant to section 598B.202.

We do not reach the parties' arguments of inconvenient forum because the district court lacks jurisdiction. *See* Iowa Code § 598B.207(1) ("A court of this state *which has jurisdiction* under this chapter to make a child-custody determination may decline to exercise jurisdiction if. . . .").

## IV. Appellate Attorney Fees.

Both parties request appellate attorney fees. "[A]s a general rule in Iowa, the court cannot award attorney fees in the absence of a statute or contract authorizing an award of attorney fees." *Iowa Beta Chapter of Phi Delta Theta Fraternity v. State*, 763 N.W.2d 250, 268–69 (Iowa 2009). Temperle cites *In re Marriage of Ross*, 471 N.W.2d 889 (Iowa Ct.App.1991), as authority for the award; Stauffer cites no authority.[6]

The basis for an award of attorney fees in *Ross* was Iowa Code section 598A.8(3),[7] which at that time provided: "In appropriate cases a court dismissing a petition under this section ["jurisdiction declined by reason of conduct"] may charge the petitioner with necessary travel and other expenses, including attorneys' fees, incurred by other parties or their witnesses." A similar provision is now found at section 598B.208(3), which provides:

If a court dismisses a petition or stays a proceeding because it declines to exercise its jurisdiction pursuant to subsection 1, it shall assess against the party seeking to invoke its jurisdiction necessary and reasonable expenses including costs, communication expenses, attorney fees, investigative fees, expenses for witnesses, travel expenses, and child care expenses during the course of the proceedings, unless the party from whom fees are sought establishes that the assessment would be clearly inappropriate. The court shall not assess fees, costs, or expenses against this state unless authorized by law other than this chapter.

 The provision offers no basis upon which to award attorney fees here because the court is not "dismiss[ing] a petition . . . because it declines to exercise its jurisdiction pursuant to subsection 1," that is, for the unjustifiable conduct of the person seeking to invoke jurisdiction. Iowa Code § 598B.208. Rather, we have concluded the court does not have jurisdiction without any finding of unjustifiable conduct.

We do not award appellate attorney fees.

## V. Conclusion.

The district court should have sustained Temperle's jurisdictional challenge as the child's home state was Texas and Iowa does not have continuing and exclusive jurisdiction. We therefore reverse and remand for an order of dismissal. Costs of this appeal are taxed to Stauffer.

**REVERSED.**

---

6. Failure to cite authority may be deemed a waiver of the issue. Iowa R.App. P. 6.903(2)(*g*)(3).

7. Iowa Code sections 598A.1 to 598A.25 were repealed. *See* 1999 Acts ch. 103, § 47.