# IN THE COURT OF APPEALS OF IOWA

No. 17-1983
Filed April 17, 2019

IN RE THE MARRIAGE OF HOLLY JOY LEWIS
AND ERIC WILLIAM LEWIS

Upon the Petition of
HOLLY JOY LEWIS,
        Petitioner-Appellant/Cross-Appellee,

And Concerning
ERIC WILLIAM LEWIS,
        Respondent-Appellee/Cross-Appellant.
_____

        Appeal from the Iowa District Court for Dallas County, Brad McCall, Judge.


        Holly Lewis appeals, and Eric Lewis cross-appeals, the modification of a dissolution-of-marriage decree. **AFFIRMED ON APPEAL, AFFIRMED AS MODIFIED ON CROSS-APPEAL, AND REMANDED WITH INSTRUCTIONS.**


        Karen A. Taylor of Taylor Law Offices, P.C., Des Moines, for appellant.

        Ashley Tollakson of Stamatelos & Tollakson, PLLC, West Des Moines, for appellee.


        Considered by Tabor, P.J., and Mullins and Bower, JJ.

**MULLINS, Judge.**

Holly Lewis appeals, and Eric Lewis cross-appeals, the modification of a dissolution-of-marriage decree. Holly argues the court erred in modifying the physical-care provisions of the decree or, alternatively, she should have been afforded additional parenting time as to the children placed in the parties' shared physical care. Eric argues the court erred in placing the two younger children in the joint physical care of both parties rather than in his physical care and the court erred in its child-support calculation as to the joint-physical-care children.

## I.    Background Facts and Proceedings

Upon our de novo review of the record, we make the following factual findings. The parties married in 1999. The marriage produced three children: two daughters, L.J.L. (born May 2000) and L.L.L. (born May 2001); and a son, L.W.L. (born September 2002).

In July 2007, Holly filed a petition for dissolution of marriage. The district court ordered the completion of a custody evaluation. A lengthy evaluation was completed in April 2008. The evaluator recommended the establishment of a physical-care arrangement in which the children would spend sixty percent of their time with Holly and forty percent with Eric. The evaluator additionally recommended that Holly participate in mental-health services. A follow up to the evaluation was completed in September. The evaluator again recommended that Holly participate in mental-health services and her status as physical caregiver should depend on continuing treatment. In October, the district court entered a dissolution-of-marriage decree stipulated to by the parties. The parties were granted joint legal custody of the children, with physical care being awarded to

Holly. Eric was granted liberal visitation rights. The court ordered that Holly participate in mental-health services until she reaches maximum benefits as determined by her therapist. Both parties were ordered to continue to participate in co-parenting counseling once per month so long as their counselor determined it necessary.

Eric maintains a laid-back and easy-going style of parenting. Eric lives with his girlfriend of more than three years, Heidi, her two children, and L.J.L. Although there were some blending issues between the children and two of Eric's previous girlfriends, and the relationships between Heidi and the children were somewhat rocky at first, these issues were influenced by Holly's negative remarks to the children about Eric's various girlfriends. The children currently have positive relationships with Heidi and her children. Eric is the president of a business owned and started by his parents. Eric earns gross annual income in the amount of $164,632.00. He has a very flexible work schedule. Eric pays for all costs associated with the children's schooling, extracurricular activities, cell phones, and automobiles. Eric is supportive of Holly's relationships with the children.

Holly has served as the primary caretaker for the children. Historically, she has tended to the children's medical and dental needs and organized their extracurricular activities. Holly maintains an intense and supervisory parenting style. Holly is generally unsupportive of Eric's relationships with the children. Holly views any indication of preference for Eric by the children as a sign of disloyalty. Such indications generally result in Holly becoming upset with the children. Holly variously accuses Eric of being a drug user and dealer. Her claims are wholly unsubstantiated. The parties' co-parenting counselor testified much of the co-

parenting struggles are largely a result of Holly's inflexibility, as it always has "to be her way or no way." The counselor also testified to her concern, since the entry of the decree, for Holly's "constant attempts to sabotage [Eric's] relationship with the kids." Holly works part time at a paint store. The amount of time she works varies but a review of her pay stubs shows an average gross income in the amount of $1814.92 per month, which equates to $21,779.04 per year.

At the time of trial, L.J.L. was seventeen years old and a senior in high school. She has since reached the age of majority. She is high functioning and independent. The relationship between Holly and L.J.L. is highly strained. L.J.L. has made it clear that she will not live with Holly. L.L.L. was sixteen years old and a junior in high school at the time of trial. She is a people pleaser and is outspoken and accomplished in both academics and extracurricular activities. L.W.L. was fifteen years old and a freshman in high school at the time of trial. He is more laid back and reserved than his older sisters. He struggles somewhat in school but does well socially and in athletics.

Since the entry of the decree, Holly has not addressed her mental-health issues or meaningfully participated in mental-health treatment as ordered. The children fear Holly, and they find Eric to be more dependable and reliable. Holly frequently engages in unpredictable behavior and directs hostility toward the children. Holly screams at the children, throws things, and breaks things during these episodes. Generally, she blames her behavior on Eric and an issue with her thyroid. Most of the hostility has been between Holly and the oldest child, L.J.L. By October 2016, L.J.L., became fed up with Holly's hostile behavior toward her and her siblings. At this time, L.J.L. went to stay with Eric for about a week. A

fight erupted between Holly and L.J.L. upon her return to Holly's home, during which Holly directed L.J.L. to kill herself. L.J.L immediately moved out of Holly's home and moved in with Eric permanently. Eric has encouraged L.J.L. to work things out with Holly.

Holly shifted her aggression to L.L.L. after L.J.L.'s departure from the home. In December 2016, Holly had an extensive and aggressive outburst toward L.L.L. in relation to the child not getting a discount on paint at the store Holly works at. This incident resulted in a founded child-abuse assessment against Holly for mental injury. The evidence supports a conclusion that eruptions such as these on the part of Holly toward the children are fairly common. The guardian ad litem testified, as a result of Holly's failure to abide by the decree and receive meaningful mental-health services, the children's safety and emotional and mental health are compromised while in Holly's care. The co-parenting counselor testified to her concern for the children's safety if they remain in Holly's physical care.

In December 2016, Eric filed a petition for modification of the decree alleging numerous developments warranted modification of the custody and support provisions of the decree. Holly filed a counter-claim requesting an increase in Eric's child-support obligation.

Following a two-day trial in November 2017, the court concluded Eric met his burden for modification of the original decree. The court found L.J.L.'s best interests necessitate her placement in Eric's physical care while L.L.L. and L.W.L.'s best interests would be served by being placed in the shared physical care of the parties. The court entered a written modification ruling in which it ordered physical care of L.J.L. be placed with Eric while L.L.L. and L.W.L. be in

the shared physical care of the parties subject to a specific parenting-time schedule. As to L.L.L. and L.W.L., the court ordered Holly's entitlement to parenting time every other Thursday evening to Sunday evening and every other Wednesday evening to Thursday morning on an alternating basis. The court also ordered Holly to enroll in mental-health therapy and treatment. In a subsequent order, the court ordered Eric to pay Holly monthly child support in the amount $1034.00 so long as three children are eligible, $1149.00 so long as two children are eligible, and $809.00 so long as one child is eligible. As noted, both parties appeal.

## II. Standard of Review

An action to modify a decree of dissolution of marriage is an equitable proceeding, which we review de novo. Iowa R. App. P. 6.907; *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015). We give weight to the factual findings of the district court, especially when considering the credibility of witnesses, but we are not bound by them. Iowa R. App. P. 6.904(3)(g). The best interests of the children is our primary consideration. Iowa R. App. P. 6.904(3)(o); *Hoffman*, 867 N.W.2d at 32.

## III. Analysis

On appeal, the parties agree L.J.L. reached the age of majority during the pendency of this appeal and, as such, neither takes issue with the physical care of that child. Additionally, Eric only challenges the portion of his child-support obligation as to the two younger children. We address each issue in turn.

A.	Physical Care

On appeal, Holly challenges the district court's modification of physical care as to the two younger children, L.L.L. and L.W.L., arguing Eric failed to meet his burden for modification. On cross-appeal, Eric contends the court erred in placing these children in the shared physical care of the parties rather than in his physical care. The original decree provided the parties joint legal custody, gave Holly physical care, and assured Eric liberal visitation rights. Eric's petition sought modification of the physical-care provisions of the decree.

> To change a custodial provision of a dissolution decree, the applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change. The changed circumstances must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary. They must relate to the welfare of the children. A parent seeking to take custody from the other must prove an ability to minister more effectively to the children's well being. The heavy burden upon a party seeking to modify custody stems from the principle that once custody of children has been fixed it should be disturbed only for the most cogent reasons.

*In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983).

*1.	Change in Circumstances*

In light of the concerns raised in the pre-decree custody evaluation, the stipulated decree ordered that Holly participate in mental-health services until she reached maximum benefits as determined by her therapist. In its ruling from the bench, the district court specifically found that Holly has failed to participate in the required mental-health treatment or otherwise address her mental-health issues, these failures have resulted in Holly's emotional outbursts toward the children, such outbursts have a detrimental impact on the children, and Holly's failure to

follow through with her mental-health treatment during the last nine years is not a circumstance the court contemplated when the decree was entered and that change is more or less permanent.

Holly's failure to address her mental-health issues as was expected and contemplated by the district court at the time of the original decree, has resulted in mental and emotional instability on Holly's part, which has led to emotional and aggressive outbursts toward the children. We expressly note our disagreement with Holly's characterization of her outbursts as isolated. Rather, the evidence shows her outbursts toward the children are regular and frequent, and they have caused the children mental and emotional trauma. Upon our de novo review of the record, we agree with the district court that Eric met his burden to show the results of Holly's failure to address her mental health amount to material and substantial changes in circumstances, they are more or less permanent and were not contemplated by the decretal court, and they relate to the welfare of the children. *See id.*

### 2. *Children's Well-Being*

We turn to whether Eric met his burden to show he has a superior ability to minister to the children's well-being. *See In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016); *Frederici*, 338 N.W.2d at 158. Our primary consideration in making this determination is the long-term best interests of the children. *See In re Marriage of Zabecki*, 389 N.W.2d 396, 395 (Iowa 1986). "Prior cases are of little precedential value, except to provide a framework for our analysis, and we must ultimately tailor our decision to the unique facts and circumstances before us." *In re Marriage of Kleist*, 538 N.W.2d 273, 276 (Iowa 1995).

The criteria for determining child custody are applied in both dissolution and modification proceedings. *See In re Marriage of Hubbard*, 315 N.W.2d 75, 80 (Iowa 1982); *In re Marriage of Courtade*, 560 N.W.2d 36, 37 (Iowa Ct. App. 1996). "The factors the court considers in awarding custody are enumerated in Iowa Code section 598.41(3)" (2016). *Courtade*, 560 N.W.2d at 37. "Although Iowa Code section 598.41(3) does not directly apply to *physical care* decisions, . . . the factors listed here as well as other facts and circumstances are relevant in determining" physical care. *In re Marriage of Hansen*, 733 N.W.2d 683, 696 (Iowa 2007). "In determining which parent serves the child's best interests, the objective is to place the child in an environment most likely to bring the child to healthy physical, mental, and social maturity." *Courtade*, 560 N.W.2d at 38. The following factors are relevant to the determination of which parent can more effectively minister to the children's long-term well-being in this case:

> (a) Whether each parent would be a suitable custodian for the child.
> (b) Whether the psychological and emotional needs and development of the child will suffer due to lack of active contact with and attention from both parents.
> (c) Whether the parents can communicate with each other regarding the child's needs.
> (d) Whether both parents have actively cared for the child before and since the [decree].
> (e) Whether each parent can support the other parent's relationship with the child.
> . . . .
> (g) Whether one or both parents agree or opposed to joint custody.
> (h) The geographic proximity of the parents.

Iowa Code § 598.41(3)(a)–(e), (g)–(h). We also note our consideration of the characteristics of the children and parents, the children's needs and the parents' capacity and interests in meeting the same, the relationships between the parents

and children, the effect of continuing or disrupting an existing physical-care arrangement, the nature of each proposed environment, and any other relevant matter disclosed by the evidence. *See In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974).[1]

In considering whether each parent is a suitable custodian, we note our acknowledgement of the parents' dichotomous parenting styles and the pros and cons that accompany each. Holly's assertive and strict parenting style has resulted in the children thriving both educationally and athletically. Eric's laid-back parenting style allows the children freedom to experience life on their terms and not be the subjects of constant scrutiny while in his home. In this case, however, we are more concerned with the cons of the parents' styles in rearing their children. We have little concern for the potential negative effects of Eric's parenting, and we find hollow Holly's efforts to paint him as an absent parent who allows the children to do what they want whenever they want to. Holly's parenting style, on the other hand, has resulted in the children experiencing mental and emotional trauma.

Due to the age and maturity of the children, the close proximity of the parents' homes, Holly's continuing entitlement to liberal parenting time, and Eric's supportiveness of Holly's relationships with the children, we are unable to say the children would suffer due to decreased contact with Holly resulting from

---

[1] We also note our consideration of the factor contained in section 598.41(3)(e)—"Whether the custody arrangement is in accord with the child's wishes or whether the child has strong opposition, taking into consideration the child's age and maturity." *Accord Winter*, 223 N.W.2d at 167 (listing the "preference of the child, if the child is of sufficient age and maturity" as a factor). L.L.L. spoke with the court in chambers with neither the parties nor counsel present. Her testimony was sealed by the district court and has not been provided to the parties or counsel. Although we consider the child's statements to the court in our overall analysis, we honor the child's request that her relations not be disclosed to the parties.

modification. Although Holly has been the historical caregiver, Eric has not been an absent parent, and he has assumed a more traditional role as a financial provider for the children. We also note our consideration of the facts that Holly has been unsupportive of Eric's relationship with the children and, due to Holly's inflexibility, difficulty in communicating about the children's needs has persisted.

"Determining what custodial arrangement will best serve the long-range interest of a child frequently becomes a matter of choosing the least detrimental available alternative for safeguarding the child's growth and development." *Winter*, 223 N.W.2d at 167. Upon our de novo review of the record and considering the foregoing matters, we find Eric met his burden to show he has a superior ability to minister most effectively to these children's well-being.

### 3. Physical-Care Arrangement

Having found Eric met his burden for modification of the physical-care provisions of the decree, we next consider his argument that the court erred in placing L.L.L. and L.W.L. in the shared physical care of the parties rather than in his physical care. Holly does not directly respond to Eric's argument in her reply brief. "Upon the request of either parent, the court may award joint physical care unless such an arrangement is not in the best interests of the children." *In re Marriage of Hansen*, 886 N.W.2d 868, 874 (Iowa Ct. App. 2016); *accord* Iowa Code § 598.41(5)(a). Notably, neither parent requested the decree be modified to provide a joint-physical-care arrangement. As such, the district court had no statutory authority to order a joint-physical-care arrangement. *See In re Marriage of Cerwick*, No. 12-1188, 2013 WL 2370722, at *3 (Iowa Ct. App. May 30, 2013) ("The legislature could have provided that the district court may consider joint

physical care whenever the best interest of the children so required—rather than upon the request of either parent. It did not do so." (citations omitted)). In any event, after a de novo review of the record and consideration of the relevant factors, *see Hansen*, 886 N.W.2d at 874, we find a joint-physical-care arrangement is not in the best interests of these children. The parties are unable to effectively communicate about the children, the degree of conflict between the parties is high, and their approaches to daily matters can be described as nothing other than dichotomous. *See id.*

Having concluded the district court improperly ordered joint physical care, we must determine which party should be awarded physical care. We have already concluded, above, that Eric has a superior ability to minister most effectively to these children's well-being. Although Holly has historically been the primary caregiver of the children and her parental characteristics have had positive results for the children in some areas, in light of recent developments, we are more concerned for the physical, mental, and emotional health of these children if they remain in Holly's physical care. We find placing the children in Eric's physical care is in these children's best interests, which is our primary consideration. *See* Iowa R. App. P. 6.904(3)(o). Consequently we modify the district court's modification ruling to place L.L.L and L.W.L. in Eric's physical care.

       *4.    Visitation*

We turn to visitation. "A noncustodial parent should be awarded liberal visitation in order to afford the children the opportunity to maximize continuing physical and emotional contact with both parents." *In re Marriage of Farrell*, 481 N.W.2d 528, 531 (Iowa Ct. App. 1991); *accord* Iowa Code § 598.41(1)(a).

"Although liberal visitation is the benchmark, our governing consideration in defining visitation rights is the best interests of the children, not those of the parent seeking visitation." *In re Marriage of Brainard*, 523 N.W.2d 611, 615 (Iowa Ct. App. 1994). On our de novo review, we see no reason to modify the weekly visitation, but we modify the extended summer visitation schedule imposed by the district court's modification decree to entitle Holly to the same visitation rights Eric was entitled to under the original decree. The parties' rights under the original decree as to spring break, holidays, and birthdays shall remain intact.

### B. Child Support

Finally, Eric argues the court erred in its child-support calculation as to the children the court placed in the parties' joint physical care. He contends, although the children were placed in the joint care of the parties, because the court awarded him more parenting time, he should be entitled to more child support. As such, he argues the district court's apparent use of the "offset" method of calculation, *see* Iowa Ct. R. 9.14(3), results in an inequity between the parties. To prevent this alleged inequity, he maintains the court should have varied from the guidelines after entering a written finding application of the guidelines would be unjust or inappropriate. *See* Iowa Ct. R. 9.11. Eric also seems to take issue with the court's equal division of expenses relating to the children's schooling and extracurricular activities.

There is a rebuttable presumption the amount of child support resulting from application of the child support guidelines is the correct amount. Iowa Ct. R. 9.4. "The court shall not vary from the amount of child support that would result from application of the guidelines without a written finding that the guidelines would be

unjust or inappropriate" because it would result in "substantial injustice" or because adjustments are necessary "under the special circumstances of the case." Iowa Ct. R. 9.11(1)–(2). Although the modification decree provided Eric with more parenting time, both parents have had the responsibility to maintain a home and provide routine care for children. *Hansen*, 733 N.W.2d at 691. Given the great disparity in the parties' incomes, we find strict application of the guidelines does not result in a substantial injustice to Eric or the children, nor are adjustments necessary to provide for the needs of the children or do justice between the parties, during the pendency of this appeal. We likewise find the district court's assessment of expenses relating to the children's schooling and extracurricular activities to be equitable.

As neither party has applied for a stay of the modified decree pending appeal, *see* Iowa R. App. P. 6.604, we assume the parties have been following the physical-care arrangement and abiding by the child-support obligations outlined in the modified decree and order for support. Having rejected Eric's support arguments, the support obligations imposed in the order for support shall remain effective from the time it was entered until the time of the filing of this opinion. *See In re Marriage of Smiley*, 518 N.W.2d 376, 380 (Iowa 1994).

However, the record before us does not reveal child support calculations worksheets that show how the court determined the current support obligations, nor is there disclosure of various assumptions used in such determination. Consequently, we are hampered in our ability to determine the propriety of the current support orders. In light of the physical-care arrangement ordered in this opinion, we remand the matter to the district court for determination of future

support obligations, and direct that the record include child support calculation worksheets or a listing of assumptions used in making such determination. *See Hoffman*, 867 N.W.2d at 37 (noting child support obligations should be "based on the present financial circumstances of the parties"); *Smiley*, 518 N.W.2d at 380.

## IV. Conclusion

We conclude Eric met his burden for modification. We affirm the district court's finding of the same, but modify the modification decree to place the two younger children in Eric's physical care. We also modify the district court's summer visitation schedule, and affirm the remainder of the visitation schedule. We reject Eric's challenges to his support obligations. We remand the matter to the district court for determination of future support obligations under the physical-care arrangement ordered herein. Costs on appeal are assessed to Holly.

**AFFIRMED ON APPEAL, AFFIRMED AS MODIFIED ON CROSS-APPEAL, AND REMANDED WITH INSTRUCTIONS.**