# IN THE COURT OF APPEALS OF IOWA

No. 20-1721
Filed November 3, 2021

**JOSEPH KOCINSKI,**
　　　　Plaintiff-Appellant,

**vs.**

**HEATHER L. CHRISTIANSEN n/k/a HEATHER L. SOYER,**
　　　　Defendant-Appellee.
_____

　　　　Appeal from the Iowa District Court for Dallas County, Richard B. Clogg, Judge.


　　　　Joseph Kocinski appeals the district court's modification of a custodial order, challenging the trial court's determination as to legal custody and physical care of the parties' son.  He also alleges the district court abused its discretion in awarding trial attorney fees to the child's mother.  **AFFIRMED AS MODIFIED**.


　　　　Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West Des Moines, for appellant.

　　　　Stacey N. Warren of CashattWarren Family Law, P.C., Des Moines, for appellee.


　　　　Considered by Bower, C.J., and Vaitheswaran and Schumacher, JJ.

**SCHUMACHER, Judge.**

Joseph (Joe) Kocinski appeals a district court ruling that modified the existing legal custodial and physical care provisions relating to C.B.K., a six-year-old child he shares with Heather Soyer, f/k/a Heather Christiansen. He also appeals the trial court's award of attorney fees to Heather. Both Joe and Heather request appellate attorney fees. On our de novo review, we find the court properly granted Heather physical care of C.B.K. We modify to clarify the award of legal custody by the district court. We determine the court did not abuse its discretion in its award of attorney fees, and we further determine neither party should be awarded appellate attorney fees. Accordingly, we affirm as modified.

## I.     Facts & Proceeding

Joe and Heather have one child together, C.B.K., born in 2014. The parents have never been married. Joe and Heather entered into a stipulated custody and support order in September 2016. Under the original order, the parents had joint legal custody and shared physical care of C.B.K. on a 2-2-3 schedule.[1] C.B.K. has emotional and behavioral issues that require medical and educational assistance. C.B.K.'s emotional and behavioral issues have increased since the parties reached the 2016 custodial agreement. He began therapy in 2017. While he continues to participate in therapy, the provider has changed on several occasions.

Heather is a licensed pediatric psychologist. As part of her employment, Heather works with children with behavioral disorders and conducts autism evaluations. She earns approximately $101,000 per year. Joe works in the field

---

[1] The parties rotated the child every two days and alternate weekends.

of tech support and is a business analyst.  He earns approximately $55,000 per year.  Both parties have appropriate housing.

Heather married Adam Soyer in September 2018.  Adam has two children from a previous marriage, ages eleven and fifteen.  C.B.K. resides with his mother, Adam's two children, and Adam on days that Heather has custody of C.B.K.  Joe is not married but has an adult son who does not reside with him.  On the days Joe has custody, C.B.K. resides only with his father.

The provisions of the original custodial order started to strain not long after entry of the stipulated order.  In December 2018, Joe filed a motion to determine which school district C.B.K. would attend.  In March 2019, the district court issued its order naming a specific school district for C.B.K. to attend.[2]  In the 2019 decision, the district court noted, "continued disagreements such as this one could lead to [m]odification of the joint custody or shared physical custody order."

C.B.K. began kindergarten in the fall of 2019.  He was placed on an Individualized Education Program (IEP) with a special instructor.  He exhibited many behavioral problems at school.[3]

C.B.K. has seen several educational and medical professionals since he was a toddler.  Joe and Heather struggled to come to an agreement on the course of medical care for C.B.K.  At the time of trial, the parties were unable to agree to the appropriate treatment for C.B.K.  Heather wanted to use a physician in her

---

[2] Neither party challenged the court's ordering of a specific school district.
[3] The aggressive behaviors exhibited in the classroom include kicking, pinching, spitting, and hitting, which resulted in C.B.K. frequently being placed in a separate room from his classmates.  A recent violent episode at school occurred on the second day of trial.  He displays aggression toward classmates and teachers.

office who recommended medication. Due to concerns over the medication, Joe wanted to use a different physician, although this physician also recommended medication. Each party effectively vetoed the other's choice of physician. C.B.K. has not received additional assistance, apart from his therapy and his IEP, since December 2019.

Joe filed a modification of the custody order in October 2019, requesting an award of physical care. Heather counterclaimed. She requested physical care and later amended her answer and counterclaim, also requesting an award of sole legal custody.

On May 8, 2020, Joe filed a motion for emergency suspension of Heather's parenting time, claiming Heather had abused C.B.K. An ex parte order suspended Heather's parenting time. This order was set aside on May 11, 2020. Heather moved for sanctions due to the email Joe received from the Iowa Department of Human Services (DHS) shortly after the filing of his motion. The email indicated DHS did not believe abuse had occurred. Joe did not disclose the email to the court. He was sanctioned in June 2020 and required to pay $6000 of Heather's attorney fees.

The present action, instituted by Joe's petition to modify in October 2019, was tried in September 2020. Following the presentation of evidence, the trial court requested both parties submit proposed orders. The court ultimately ruled in Heather's favor on December 18, 2020, adopting her proposed order nearly verbatim. The court granted Heather's petition to modify legal custody, which required her to inform Joe of major decisions affecting C.B.K. and receive his input. However, Heather was granted final decision-making power concerning C.B.K.'s

legal status, medical care, education, extracurricular activities, and religious training. The court also granted Heather physical custody of C.B.K. and awarded her attorney fees of $5000. Joe appeals.

## II. Standard of Review

Custody matters are tried in equity, so we review the proceedings de novo. Iowa R. App. P. 6.907. "Though we make our own findings of fact, we give weight to the district court's findings."[4] *In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016); *see also In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013) ("We give weight to the findings of the district court, particularly concerning the credibility of witnesses; however, those findings are not binding upon us."). "Prior cases have little precedential value; we must base our decision primarily on the particular circumstances of the parties in the case." *In re Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983). Our overriding consideration is always the child's best interests. Iowa R. App. P. 6.904(3)(o).

---

[4] Joe argues our court should not grant the lower court deference in its findings of fact or credibility due to the trial court's near verbatim adoption of Heather's proposed order. Our supreme court has recognized "the customary deference accorded trial courts cannot fairly be applied when the decision on review reflects the findings of the prevailing litigant rather than the court's own scrutiny of the evidence and articulation of controlling legal principles." *Rubes v. Mega Life & Health Ins. Co.*, 642 N.W.2d 263, 266 (Iowa 2002). While our supreme court has refused to adopt a higher standard of review for such cases, it has noted that "we must scrutinize the record more carefully when conducting our appellate review." *NevadaCare, Inc. v. Dep't of Human Servs.*, 783 N.W.2d 459, 465 (Iowa 2010). Due to the district court's adoption of Heather's proposed order, we apply the supreme court's mandate in this case.

## III.    Discussion

Joe raises several issues on appeal.  First, he claims the district court should not have granted Heather sole legal custody.[5]  Second, he argues C.B.K. should be placed in his physical care.  Third, he asserts the district court abused its discretion when it awarded Heather $5000 in trial attorney fees.  Both parties request an award of appellate attorney fees.

### A.    Legal Custody

Important to our analysis is Joe's agreement that the district court awarded Heather sole legal custody.  He argues "the record does not reflect clear and convincing evidence to justify Heather having sole legal custody of C.B.K."  Joe contends the court should have maintained joint legal custody of C.B.K.  "'Legal custody' carries with it certain rights and responsibilities, including . . . 'decisionmaking affecting the child's legal status, medical care, [and] education . . . .'"  *In re Marriage of Hansen*, 733 N.W.2d 683, 690 (Iowa 2007) (citation omitted).  Joint legal custody is preferred over sole custody.  *Weidner*, 338 N.W.2d at 359.  If a court does not grant joint custody despite one parent requesting it, the court must "cite clear and convincing evidence, pursuant to the factors in [section 598.41(3)], that joint custody is unreasonable and not in the best

---

[5] Joe, in various portions of his brief, refers to this award as "imposing conditions on the joint legal custody he shares with Heather, which ultimately gives Heather power to make the final decision on matters concerning C.B.K. after obtaining Joe's input."  This language is similarly contained in the order portion of the district court ruling, rather than the use of "sole legal custody" terminology.

interest of the child to the extent that the legal custodial relationship between the child and a parent should be severed." Iowa Code § 598.41(2)(b) (2020).[6]

Joe urges us to reverse the district court's modification of legal custody to allow him to remain a joint legal custodian. Joe contends, "Though Joe and Heather had an acrimonious relationship, it was not at the level that joint custody should be denied."

We highlight Joe's agreement to the sole legal custody status as the district court's ruling, while granting Heather's counterclaim, does not use the words "sole legal custody." The modified decree reads as follows:

> 1. JOINT LEGAL CUSTODY. Heather'[s] counterclaim for modification of legal custody is granted. Joe's Application for Modification is denied. Joe shall have access to information and the ability to have input into decisions. However, there must be boundaries on the terms of legal custody and the ability for Heather to make final decisions in the event the parties cannot reach an agreement. Therefore, these terms of joint legal custody will apply:
> a. Both parents will have legal access to information about C.B.K., including but not limited to medical, educational, and law enforcement records.
> b. Both parents will have access to information and be informed of decisions affecting C.B.K.'s legal status, medical care, education, extracurricular activities, and religious training.
> c. The parents will consult with one another about decisions regarding the legal status, medical care, education, extracurricular activities, and religious training related to C.B.K. and will follow this process for notice and input on decisions.
> d. If there are decisions to be made about an issue, Heather will provide Joe with reasonable notice of any issue in writing.
> e. Joe will then have 48 hours following the written notification to provide his input on the matter to Heather in writing.
> f. If Joe provides input, Heather will consider Joe's input and make a determination on the course of action.
> g. If Joe does not provide input, Heather may make a determination on the course of action.

---

[6] *See also* Iowa Code § 600B.40(2) (making chapter 598 applicable in non-marital custody cases).

h. Both parents will notify the other if they have any knowledge of any illness, accident, or other matter affecting C.B.K.'s well-being.

i. Disagreements about C.B.K. and any issue that may impact him will be resolved outside of C.B.K.'s presence.

As noted above, the court's order stated, "Heather's counterclaim for modification is granted." Heather's initial answer and counterclaim did not specifically state a request for sole legal custody, but requested a modification of joint legal custody. She amended her answer and counterclaim on May 8, 2020, to request sole custody. Because Joe concedes the language of the modification ruling grants Heather sole legal custody, we do not address the issue of hybrid legal custody discussed in our previous rulings[7] and the tie-breaker designation addressed by our supreme court in *Harder v. Anderson, Arnold, Dickey, Jensen, Gullickson & Sanger, L.L.P.*, 764 N.W.2d 534, 538 (Iowa 2009). We turn to

---

[7] These custody statutes do not mention assigning sole decision-making authority for some responsibilities of child-rearing and joint participation for others. *See Hansen*, 733 N.W.2d at 690 ("When joint legal custody is awarded, 'neither parent has legal custodial rights superior to those of the other parent.'" (citation omitted)). Yet we have found a smattering of cases where the district court unbundled the rights listed in section 598.1(3) and (5). *See, e.g.*, *Sloan v. Casey*, No. 15-0921, 2015 WL 9451093, at *7–8 (Iowa Ct. App. Dec. 23, 2015) (upholding modification of joint legal custody to make one parent solely responsible for scheduling medical appointments for child); *In re Marriage of Bates*, No. 11-1293, 2012 WL 1440340, at *4 (Iowa Ct. App. Apr. 25, 2012) (affirming joint legal custody was unreasonable as it relates to health-care decisions). As this court has noted in the past:

> [Chapter 598] appears to consider joint custody and sole custody as all-or-nothing propositions. When parties are awarded "joint legal custody," "both parents have legal custodial rights and responsibilities toward the child" and "neither parent has legal custodial rights superior to those of the other parent." The statutes mention nothing about assigning sole decision-making authority for some responsibilities and joint participation for others. Iowa's legal landscape is virtually barren of appellate cases in which the district court unbundled legal custody rights. Our supreme court has not spoken on the matter.

*Armstrong v. Curtis*, No. 20-0632, 2021 WL 210965, at *3 (Iowa Ct. App. Jan. 21, 2021) (citations omitted).

whether the record in this case supports the modification of the parties' previous status as joint legal custodians to an award of sole legal custody with Heather.

Here, the district court found the acrimony between Joe and Heather created conditions that were not in the best interest of their child. The ability, or lack thereof, of the parents to communicate is an important factor when considering the best interest of the child. *See* Iowa Code § 598.41(3)(c). "Although cooperation and communication are essential in joint custody, tension between the parents is not alone sufficient to demonstrate [joint custody] will not work." *In re Marriage of Gensley*, 777 N.W.2d 705, 715 (Iowa Ct. App. 2009) (quoting *In re Marriage of Bolin*, 336 N.W.2d 441, 446 (Iowa 1983)). In order to weigh against joint custody, the inability to communicate "must rise above the 'usual acrimony that accompanies a divorce.'" *Gensley*, 777 N.W.2d at 715 (citation omitted).

On our de novo review, we agree communication has broken down to a point that joint legal custody is not in C.B.K.'s best interest. The record is replete with examples of acrimony and discord. The parties required a court order to determine which school C.B.K. would attend. Sanctions were imposed against Joe for pursuing a suspension of Heather's parenting time despite DHS informing him that allegations she abused C.B.K. were unfounded. The parties are incapable of coming to a consensus on C.B.K.'s course of treatment. There is evidence of deep mistrust and derision between the parents. While Joe contends the breakdowns in communication are rare, the record is clear that the issue is consistent and impedes the parents' ability to make important decisions that are required for C.B.K.'s best interest. We acknowledge that many cases reflect a difficulty in communication between parents; however, the special medical and

educational needs of C.B.K., along with the parents' inability to agree on educational and medical issues, separates this case from others.

Bearing in mind our primary consideration is C.B.K.'s best interest, his parents' inability to communicate and make decisions together means joint custody is no longer workable. As Dr. Rappaport—a licensed clinical psychologist who served as an expert witness in this case—testified, children with special needs require stability in their educational and medical plans in order to perform well. *See id.* at 716 (noting the need for a stable atmosphere in order to limit "confusion and emotional upheaval"). The inability to obtain that stability can have harmful long-term effects, including falling behind educationally and suffering from lowered self-esteem. C.B.K.'s needs have suffered under the joint legal custodial arrangement. Joint custody is not in C.B.K.'s best interest. We modify to clarify the award of sole legal custody to Heather.

### B. Physical Care

Joe argues the district court erred in granting Heather physical care of C.B.K. and should have instead granted him physical care. A party seeking to modify physical care of a child must prove two prongs by a preponderance of the evidence. *Harris*, 877 N.W.2d at 440. First, they must establish "a substantial change in circumstances occurred after the decree was entered." *Id.* The changed circumstances "must not have been contemplated by the court when the decree was entered, and they must be more or less permanent." *Id.* (quoting *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983)). Additionally, the change in circumstances must relate to the welfare of the child. *Frederici*, 338 N.W.2d at 158.

Second, the party seeking modification must "prove a superior ability to minister to the needs of the children." *Harris*, 877 N.W.2d at 440. We are guided by the factors in Iowa Code section 598.41(3) and those explained in *In re Marriage of Winter*, 223 N.W.2d 165, 166-67 (Iowa 1974). We seek "to place the child[ ] in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *Hansen*, 733 N.W.2d at 695.

Here, both parties concede there has been a substantial change in circumstances regarding the parties' previous agreement to shared physical care. Additionally, both parents agree C.B.K.'s behavioral dysregulation has grown worse since he began school, with particular trouble during transitions between parents. We agree. *See Harris*, 877 N.W.2d at 441 ("Discord between parents that has a disruptive effect on [a child's] [life] is a substantial change of circumstances that warrants a modification." (second alteration in original) (quoting *Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa Ct. App. 2002))). Thus, we must examine which parent can provide superior care to their child.

It is clear that both parties care deeply about C.B.K. However, upon our de novo review, we conclude Heather can provide superior care for C.B.K. A few factors are particularly important in our analysis. First, Joe's primary claim for being the superior parent is that C.B.K. becomes less dysregulated in his presence due to the one-on-one attention he provides.[8] In contrast, Heather puts C.B.K. in positions that tend to cause his dysregulation—particularly those where he does not have the sole and consistent attention of an adult. Joe highlights these

---

[8] There is considerable disagreement in this record as to whether C.B.K. actually behaves better in Joe's home.

difficulties in Heather's care in support of a finding he is the parent able to provide superior care.

However, avoiding triggers for misbehavior is not inherently better parenting. For instance, our supreme court noted in *Harris* that the parent who was actively trying to address their daughter's delayed socialization ought to have physical care of her. 877 N.W.2d at 444; *see also In re Marriage of Hubbard*, 315 N.W.2d 75, 82 (Iowa 1982) (selecting the parent who "worked diligently to correct the educational deficiencies of his children"). Additionally, avoiding difficult situations is not likely to help C.B.K.'s long-term social development. C.B.K.'s special education teacher testified that children she works with, including C.B.K., need to learn to cooperate and share. Avoiding situations where cooperation and sharing are necessary may hinder such development. Heather is the parent actively seeking to address C.B.K.'s behavioral issues and improve upon them.

Another important factor stems from "[t]he characteristics of [the] child" and "[t]he capacity and interest of each parent to provide for the emotional, social, moral, material, and educational needs of the child." *Winter*, 223 N.W.2d at 166. C.B.K. has a history of behavioral troubles that will require educational and medical assistance going forward. Heather has been the primary parent coordinating C.B.K.'s appointments since birth. Moreover, as a pediatric psychologist herself, Heather is well equipped to know and understand the options available to C.B.K. and how to access them. Heather's intimate knowledge of C.B.K.'s treatment history and the options available going forward weigh in favor of her obtaining physical care of C.B.K.

Finally, we agree that Joe shows a marked lack of maturity when dealing with Heather and little understanding of how his behavior affects C.B.K.'s relationship with his mother. A lack of maturity has been an important factor when considering who will render superior care. *See Melchiori*, 644 N.W.2d at 370. Joe shows no remorse for pursuing his claim of abuse against Heather despite his knowledge of the DHS's position that no abuse occurred. Additionally, he has taken a consistent stance that his judgment is better than those of trained professionals.[9] In contrast, Heather and Adam testified repeatedly acknowledging their mistakes and how they have tried to improve. Joe also appears to minimize C.B.K.'s behaviors while in his care.

Lastly, Joe contends that one of Adam's children poses a threat to C.B.K., making it unsafe for Heather to have physical care. The record does contain evidence of the child having behavioral issues and acting out. There is one instance in particular where the child pushed C.B.K. down and caused C.B.K. to get a contusion on his head. However, the record also contains testimony that the child's behavior has improved considerably the past year or two. Overall, the evidence of any potential risk to C.B.K. is insufficient to undermine our conclusion given the other factors previously discussed. We determine Heather is the parent able to provide superior care to C.B.K. and is the appropriate physical custodian.

## C. Trial Attorney's Fees and Appellate Attorney's Fees

Joe contends the district court abused its discretion in awarding Heather $5000 in trial attorney fees. Heather responds by claiming Joe waived the issue

---

[9] Joe testified he believes his judgment is more appropriate than C.B.K.'s current therapist and two DHS workers who were involved in various claims made by Joe.

by paying the attorney fee award in full. However, a party does not waive the right to appeal by paying the judgment amount. *Hegtvedt v. Prybil*, 223 N.W.2d 186, 188-89 (Iowa 1974) ("Waiver is the voluntary relinquishment of a known right. Payment is not voluntary when it is made under compulsion of court order."). That is true even if, as is the case here, a supersedeas bond is available to stay the execution of the judgment. *Peoples Tr. & Sav. Bank v. Sec. Sav. Bank*, 815 N.W.2d 744, 754 (Iowa 2012) ("[T]he mere availability of a supersedeas bond or other mechanism to stay enforcement does not mean that payment of a judgment results in waiver of the right to appeal."). Thus, we may consider the merits of Joe's appeal.

We review the award of attorney fees for an abuse of discretion. *NevadaCare*, 783 N.W.2d at 469. We will reverse only when the court bases its decision "on grounds that are clearly unreasonable or untenable." *Id.* Iowa Code section 600B.26 allows courts to grant an award of attorney fees to the prevailing party in a custody dispute. Trial attorney's fees should be based on "the respective abilities of the parties to pay" and "must be fair and reasonable." *In re Marriage of Guyer*, 522 N.W.2d 818, 822 (Iowa 1994).

As the prevailing party, the court had the discretion to award Heather attorney fees. However, given the financial circumstances of the parties—Heather makes considerably more than Joe, and the attorney fees were substantial in this case—the court reduced the amount Joe was responsible for to $5000, a small percentage of the fees requested. Such an award was fair and reasonable, and it was not an abuse of discretion.

Both parties request an award of appellate attorney fees. Iowa Code section 600B.26 makes appellate attorney fees available to the prevailing party. *Wendt v. Peterson*, No. 20-0060, 2020 WL 4814153, at *4 (Iowa Ct. App. Aug. 19, 2020). "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion." *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006) (citation omitted). We consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.* (citation omitted). Additionally, "we consider whether the party making the request was obligated to defend the trial court's decision on appeal." *Guyer*, 522 N.W.2d at 822.

As the prevailing party, we have discretion to award fees in Heather's favor. Heather was obligated to defend the trial court's decision on this appeal. However, given the respective financial conditions of the parties, we decline to award appellate attorney fees to either party.

## VI. Conclusion

We modify to clarify the award of legal custody to Heather as sole legal custody. We affirm the award of physical care to Heather, the award of trial attorney fees to Heather, and deny the requests for appellate attorney fees.

**AFFIRMED AS MODIFIED.**